[Civ. No. 20654. Third Dist. Oct. 1, 1981.]

DEPARTMENT OF FORESTRY, Plaintiff and Respondent, v. ROBERT R. TERRY, Defendant and Appellant.

COUNSEL

Francis T. Cornish for Defendant and Appellant.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, and William D. Cunningham, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

CARR, J.—Defendant appeals from a judgment entered foreclosing a statutory lien and ordering the sale of certain real property owned by him. Plaintiff (Department) brought the action to foreclose its statutory lien arising from costs incurred in correcting alleged violations of the Z'berg-Nejedly Forest Practice Act of 1973. (Pub. Resources Code, § 4511 et seq.) For reasons herein stated, we reverse.

Defendant is the owner of certain timberland in Lassen County. In January 1976, he submitted a timber harvesting plan (THP) to the Department as the necessary first step for conducting timber harvesting operations on the property. (Pub. Resources Code, § 4581.) The plan was assigned plan number 2-76-30-LAD-3(2) and subsequently approved in February 1976. The plan designates Western Angus & Feed Corporation, c/o Robert Terry as the timber owner, and defendant as the timber operator. On the form is a certification signed by defendant on behalf of Western Angus & Feed Corporation, with the title "owner" and the signature of defendant as timberland owner. The certification provides: "The above conforms to my (our) plan and upon filing it is agreed that harvesting will be in accordance therewith. Consent is hereby given to the State Forester, his agents and employees to enter the premises to inspect timber operations, and to determine compliance with Forest Practice Rules." Defendant is identified as the "person to be contacted" on the operation. The plan was approved and timber harvesting operations were thereafter conducted on the property.

During an onsite inspection in August 1976, Department identified the first of what was later determined to be violations of the Forest Practice Rules of the Northern Forest District. (See Cal. Admin. Code, tit. 14, §§ 931-940.) Upon a postharvest inspection, it was determined none of the previously identified violations had been corrected, and in August 1978, Department issued a notice of intent to take corrective action (Notice) pursuant to Public Resources Code section 4608.[1] On August 14, 1978, the Notice allegedly was served on defendant by way of certified mail sent to the address of the defendant appearing on the timber harvesting plan. The Notice set out the specific corrective measures the Department would undertake pursuant to section 4608 in order to correct the effects of the violations described therein. Included was a statement of the corrective action to be taken by defendant not

---

[1]Hereafter, all statutory references are to the Public Resources Code.

less than 30 days from the date of service of the Notice, and an admonition that if such corrective action was not taken by defendant before the date specified, the Department would take corrective action and charge defendant for the costs thereof pursuant to section 4610. The Notice stated if defendant disagreed for any reason with the proposed corrective action or with the charging of defendant with the costs thereof, defendant could, within 10 days from service of the Notice, request a public hearing before the State Board of Forestry.[2]

In his answer to the complaint herein, defendant denied he had received the notice of required corrective action as he resided in Los Angeles, not in Milford, a small town in Lassen County, at the time the notice was sent. At oral argument Department conceded the registered letter had been returned and was not delivered to defendant. Having no knowledge of the required corrective measures, defendant failed to take any corrective action or to request an administrative hearing.

The Department, after the passage of the statutorily set time, solicited bids from private contractors for performance of the corrective work. A contract was entered into between the Department and the lowest bidder, and the corrective work was performed at a cost of over $9,000. In addition, almost $2,000 in expenses was allegedly incurred by the Department in arranging for and supervising the corrective action and for miscellaneous administrative actions.

In June 1979, Department recorded a notice of lien showing that corrective action had been performed. (See § 4608.) The notice of lien identified the real property upon which the corrective action was taken, the amount of the lien, and the name of the owner of the property. In August 1979, Department filed the instant action to foreclose its statutory lien in the amount of $11,822.65. Defendant answered, and the matter was set for trial on October 9, 1980.[3] On that date, defendant was unavailable for trial, and, at the request of counsel for both sides, the court proceeded to hear arguments based on legal issues in the case. The court then entered an order akin to a pretrial conference order finding: (1) that defendant was the "person responsible" under section 4608 for the timber harvesting violations; (2) that defendant was prop-

---

[2]Section 4529.5 authorizes service by registered or certified mail of any documents pursuant to the Forest Practice Act.

[3]The same mailing process for service of summons and complaint on defendant was employed, but apparently defendant saw a notice in the newspaper of the lien and his attorney investigated and procured a copy of the complaint.

erly served with notice of the alleged violations, and (3) defendant's failure to request a public hearing as provided in the code precluded him from raising issues which could have been raised at the administrative hearing.[4]

The trial court made its ruling on the legal issues submitted for determination at the pretrial conference and the matter later came on for trial. At the conclusion of trial, the court found as follows: the Department had proceeded in the manner required by law in taking the corrective action; the need for corrective action was supported by the evidence; the corrective work was performed and completed in compliance with the terms of the contract; and the Department proceeded in the manner required by law to establish a lien on the property. Judgment was subsequently entered foreclosing Department's lien in the amount of $11,822.65, plus interest and costs incurred in prosecuting the action.

I

Defendant raises several issues on appeal. He asserts he was not served with the notice of intent to take corrective action; that it was improper for the Department to have taken any corrective action and to impress a lien upon his property in the absence of his receipt of some notice. We agree with this assertion in the absence of any evidence in the record that defendant was purposely avoiding receipt of the registered letter.

Section 4608 provides in part: "Prior to taking any corrective action, . . . the department shall serve a written notice upon the person responsible for the violation." In turn, section 4529.5 provides: "Service of documents where required under this chapter may be made by registered or certified mail addressed to the respondent's latest address registered on file with the department."

In its conclusions of law, the trial court found: "It is the court's view of the requirements under Public Resources Code section 4529.5 that service under section 4608 can be made by registered or certified mail addressed to the timber owner, timberland owner, or timber operator identified on the applicable timber harvesting plan at the address which

[4]We note that some of the "legal" issues raised and determined in the impromptu pretrial conference of necessity were based on factual findings. The record is barren of any factual basis for such findings.

appears on the applicable timber harvesting plan. There is no requirement in any of these sections that a return receipt be signed by the defendant. The sections merely require proof that the notice was mailed by registered or certified mail to the designated address. The defendant cannot avoid service by not picking up his certified mail or refusing delivery thereof. He cannot avoid service by abandoning the address given in the timber harvesting plan. In the present case, therefore, defendant has been properly served with the Notice of Intent to Take Corrective Action."

■ We note initially that the record fails to support that a notice by registered mail was even mailed to defendant. The unverified complaint, which is not evidence, alleges such a notice was sent but the answer denies this allegation. It was therefore incumbent upon the Department to prove the mailing. In the absence of such proof, by way of declaration or otherwise, the trial court was without authority to make any finding, even an improper one, at the pretrial conference that "defendant has been properly served with the Notice of Intent to take Corrective Action."

■ The trial court correctly observed: "The defendant cannot avoid service by not picking up his certified mail or refusing delivery thereof." (See *Hankla* v. *Governing Bd.* (1975) 46 Cal.App.3d 644 [120 Cal. Rptr. 827].) However, in the case at bar, there was 1) no evidence that defendant engaged in such a course of conduct, and 2) no finding by the court that he did. Even assuming the trial court was correct in determining that the service requirements of section 4529.5 are satisfied by "proof that the notice was mailed by registered or certified mail to the designated address," there is a total absence of such proof in the record.

However, we do not concur with the court that proof of mere mailing is adequate notice to deprive a person of property rights.

Section 4529.5 provides, in pertinent part, "Service of documents, where required under this chapter, may be made by registered or certified mail addressed to respondent's latest address *registered* on file with the department ....." (Italics added.) First, the Department, by its own admission at oral argument, has no registry of addresses. It employs the address in the THP or at least it did in the instant case, which, according to Mr. Lucky of the California Department of Forestry, was the first corrective action initiated by the Department. The

language of section 4529.5 implies there be some central depository of current addresses. Yet the Department, though empowered to do so, has not promulgated any rules or regulations for the registering of addresses or for followup notice (such as posting the property or printing the notice in the local newspaper) when the original letter is returned to the Department.

Second, the concept of certified or registered mail is that the receiver thereof signs for the mail and this signed receipt is at least prima facie evidence that the party in question received the requisite notice. If the Legislature had intended that a simple deposit in the mail be sufficient notice, a mere mailing pursuant to sections 1013 and 1013a, Code of Civil Procedure would have been prescribed. Section 1013, Code of Civil Procedure specifically provides the service is complete at the time of deposit in the post office, mail box or chute or like facility. No such provision is found in section 4529.5 and in fact is negated by the requirement of registered or certified mail.

Section 1020, Code of Civil Procedure, in analogous situations, addresses the very purpose of the registered or certified mail requirement and provides: "Any notice required by law ... the service of which is not governed by the other sections of this chapter ... may be given by sending the same by registered mail with proper postage prepaid addressed to the addressee's last known address with request for return receipt, *and the production of a returned receipt purporting to be signed by the addressee shall create a disputable presumption that such notice was received by the person to whom the notice was required to be sent.*" (Italics added.)

The requirement of service by registered mail is not satisfied by mere mailing.

## II

■ Finally, defendant asserts Judge Macintyre was ineligible to serve as a judge of the superior court. We find no merit in this assertion.

After defendant peremptorily disqualified Judge Harvey (Code Civ. Proc., § 170.6), there was no other superior court judge in Lassen County available to preside over the trial. Judge Macintyre, a judge of

the Lassen County Justice Court, was then appointed by the Chief Justice to sit on the superior court bench. (Cal. Const., art. VI, § 15.)

Article VI, section 15 of the California Constitution provides in part: "A person is ineligible to be a judge of a court of record unless for 5 years immediately preceding selection to a municipal court ... the person has been a member of the State Bar or served as a judge of a court of record in this State. A judge *eligible* for municipal court service may be assigned by the Chief Justice to serve on any court." (Italics added.)

At the time of trial, Judge Macintyre had been a member of the State Bar for seven years. Thus, he was *eligible* to become a member of the municipal court bench and could properly be assigned to serve on any court. (Cal.Const., art. VI, § 15.)

It is unnecessary to the disposition herein that other issues raised by defendant be addressed.

The judgment is reversed.

Reynoso, Acting P. J., and Blease, J., concurred.