[No. C000659. Third Dist. Jan. 31, 1989.]

MAXIM N. BACH, Plaintiff and Appellant, v.
STEVEN R. McNELIS et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and IV.

**COUNSEL**

Maxim N. Bach, in pro. per., for Plaintiff and Appellant.

Coddington, Hicks & Danforth, Clinton H. Coddington, Richard G. Grotch, Kronick, Moskovitz, Tiedemann & Girard and Thomas C. Hughes III for Defendants and Respondents.

## OPINION

**SPARKS, J.**—The former version of article VI, section 17 of the California Constitution barred a judge of a court of record from practicing law and rendered the judge ineligible for any public employment other than a judicial one. Section 6 of that article empowers the Chief Justice to assign any judge to another court of higher jurisdiction without the consent of the assigned judge. In the published portion of this opinion we consider the interplay between these constitutional provisions. The question is whether a judge of a justice court, a court of nonrecord at the time of this action,[1] who is a member of the State Bar of California and who is employed by a public community college, may lawfully be assigned to sit on the municipal and superior courts, both courts of record. We conclude that there is no constitutional conflict in such a case and therefore hold that the assignment may lawfully be made.

We also consider whether sanctions may be imposed where most but not all of the causes of actions in a plaintiff's complaint are frivolous. We hold that sanctions may properly be imposed under Code of Civil Procedure section 128.5 in such a case.

Plaintiff Maxim N. Bach, an Oroville attorney, appeals from the judgment of dismissal entered after the trial court sustained demurrers without leave to amend to his 1986 pro se complaint which had named Judge Roger Gilbert, a Butte County Superior Court judge, and Judge Steven McNelis, a Gridley Justice Court judge, as defendants. The complaint challenged the constitutional validity of the assignment of Judge McNelis to courts of record in Butte County and added causes of action against both judges for claimed violations of the Political Reform Act of 1974 (PRA). In addition

---

[1] At the time of these events, justice courts were not courts of record. "All except justice courts are courts of record." (Former Cal. Const., art. VI, § 1.) At the November 1988 general election, the electorate passed Proposition 91, a constitutional amendment proposed by the Legislature. This measure amended article VI, section 1 of the California Constitution to provide that justice courts, like all other California courts, are courts of record. As amended, section 1 now reads: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts. All courts are courts of record." By its terms, "the changes made by this measure shall be operative on January 1, 1990." (Stats. 1988 (1987-1988 Reg. Sess.) Res. ch. 65; see also Stats. 1988, ch. 505, § 3, re Gov. Code, § 71607.)

to his appeal from the dismissal of his complaint, plaintiff also appeals from the subsequent order of the lower court awarding attorney's fees as sanctions to the defendant jurists. Although the issues raised by the parties are too numerous to recount here succinctly, we shall ultimately affirm the dismissal of all of the complaint except for the Political Reform Act cause of action against Judge Gilbert. On the sanctions question, we shall uphold the award in part and reverse it in part. In the interests of brevity, a host of procedural challenges are addressed and rejected in the unpublished portion of this opinion.

## THE COMPLAINT AND ITS PROCEDURAL HISTORY

Plaintiff's complaint is entitled "Complaint for Violations of California Constitution, Political Reform Act, Government Code, etc." At the heart of the complaint is a challenge to the propriety of the assignments of Judge McNelis of the Gridley Justice Court to courts of record while he maintained his membership in the state bar and held public employment, both of which assertedly violate the constitutional restrictions on judges of courts of record. Plaintiff alleged a conspiracy between the defendant jurists (which we shall call "the assignment conspiracy") to obtain the assignments of Judge McNelis to the superior court since 1984 despite the fact they knew he was "ineligible and unqualified to be selected, assigned or appointed to the Butte County Superior Court."[2] The complaint also alleged Judge McNelis accepted blanket assignments to the municipal court from 1980 on, "[even] though not qualified legally . . . ." With a touch of inconsistency, the complaint then alleged Judge McNelis, though illegally occupying positions on the municipal and superior court benches, nevertheless violated the Political Reform Act of 1974 (PRA) (Gov. Code, § 81000 et seq. [subsequent undesignated section references are to the Government Code]) by failing from 1980 to 1984 to file the disclosure statements required of judges of courts of record by former section 87200.[3] (Stats. 1983, ch. 214, § 1, p. 680.)

Plaintiff alleged it was a further violation of the PRA's disclosure requirements for Judge McNelis to omit from his 1985 disclosure statement (and to fail to disclose in earlier years) his income from public employment at Butte County Community College. Tacked onto these allegations which essentially involved Judge McNelis is a final substantive one which generally claimed Judge Gilbert failed to comply with the PRA by failing to report

---

[2] Since it is alleged that Judge Gilbert has been presiding judge of the superior court only since 1985, it is unclear how he "obtained" the challenged assignments in 1984.

[3] Effective July 1, 1985, section 87200 was amended to apply to all judges of the judicial branch. (Stats. 1984, ch. 727, §§ 7, 12, p. 2666.) Judge McNelis began filing disclosure statements as of July 1985.

"various matters," and specifically claimed he omitted a personal school loan from his 1984 disclosure statement. It was alleged the defendants were jointly liable for each other's PRA violations. (§ 91006.) Plaintiff sought damages (both compensatory and punitive), declaratory relief, mandate against Judge Gilbert ever recommending that Judge McNelis be assigned to the superior court, and prohibition against Judge McNelis from accepting assignments to the municipal or superior courts.

Judge McNelis demurred on various procedural grounds and upon the substantive grounds that (1) because he was properly assigned to courts of record, no cause of action was stated with respect to the assignment conspiracy; and (2) no cause of action was stated for violation of the PRA because he was not required before 1985 to file any statements and he was not required to report his public employment income on his 1985 statement. Describing plaintiff as "a disgruntled attorney acting in propria persona who seeks to disrupt the operation of the Butte County courts by bringing a completely frivolous complaint," Judge McNelis requested that "sanctions be imposed upon plaintiff pursuant to California Code of Civil Procedure Section 128.5."

Judge Gilbert also generally demurred to plaintiff's complaint. Like Judge McNelis, he too challenged plaintiff's complaint on a series of procedural grounds. On substantive grounds, his demurrer asserted that insufficient facts were alleged to establish (1) his liability either individually or under a conspiracy theory for obtaining the challenged assignments; or (2) a violation of the PRA. Judge Gilbert also filed a motion for judgment on the pleadings which raised the identical contentions and added a claim of judicial immunity in obtaining the appointments. Finally, as part of his fusillade against the complaint, Judge Gilbert moved for summary judgment based on his declaration showing there were no violations of the PRA and no facts on which to base liability either as an individual or as part of the assignment conspiracy. Although his counsel, in an application to stay discovery, described plaintiff's suit as "frivolous, egregious and otherwise without merit" and as a "campaign ploy," Judge Gilbert did not originally seek sanctions against plaintiff.

Judge Raymond R. Roberts, a retired superior court judge, was assigned to the case and heard argument on the various motions on May 2, 1986. The court sustained both demurrers without leave to amend. As to the assignment conspiracy, the trial court ruled that plaintiff's theory was predicated upon the fallacious premise that an assigned judge was subject to the same limitations and proscriptions as a judge regularly elected or appointed. Since Judge McNelis, as a justice court judge, was constitutionally and legally qualified to be assigned to a higher court, there could not be an

illegal conspiracy between the defendants to obtain his lawful assignment. In the trial court's view, "there is no known requirement that a Justice Court judge temporarily assigned to a higher court must either file a financial disclosure because of his elevation or that he must resign from the State Bar." On the question of Judge Gilbert's duty to report his loan, the trial court took judicial notice of a sworn affidavit in another action which indicated "that the loan in question was a regular bank loan made to students, and for that reason falls under an exception and need not be reported." For these same reasons the court granted the motion for judgment on the pleadings. It then placed the motion for summary judgment off calendar. Finally, the court orally stated it "reserve[d] the right to assess attorney's fees against the plaintiff since he is acting as a private person and the code provides that private persons initiating that type of litigation do so at their own risk; therefore, I am reserving the right to award attorney's fees upon application after finality of this Court's action." In its formal order sustaining the demurrers and granting the motion for judgment on the pleadings, entered on June 9, the court explicitly "reserve[d] the right to assess attorney's fees against the plaintiff pursuant to Government Code Section 91012 upon application after finality of the Court's action."

In the meantime, on May 23, the court on its own motion issued an order to show cause why attorney's fees should not be awarded as sanctions against plaintiff under Code of Civil Procedure section 128.5 and why plaintiff should not be referred to the State Bar for discipline.

The order set forth a schedule for filing supporting and opposing papers and advised the parties that if deemed necessary the court would calendar the matter for oral argument. On June 16, Judge McNelis filed his opening brief on the order to show cause re sanctions. There he argued sanctions could and should be imposed under both section 91012 and Code of Civil Procedure section 128.5.

Eventually the hearing on sanctions was heard on July 15. In the meantime, plaintiff made a number of procedural attacks upon this hearing. He renews these grounds on appeal and we consider and reject them in the unpublished portion of this opinion. At the conclusion of the hearing, the court awarded attorney's fees as a sanction under section 91012 and Code of Civil Procedure section 128.5 in the amount of $9,073.50 to Judge McNelis and $9,675.15 to Judge Gilbert. A formal order specifying the bases for the award followed, and plaintiff thereafter timely filed his notice of appeal. The parties' arguments on appeal recapitulate those raised below. For clarity, we shall reorder and consolidate them in the discussion.

DISCUSSION

I

POLITICAL REFORM ACT OF 1974

We first consider two of the alleged PRA violations by the defendants, which are something of a non sequitur in a complaint otherwise purporting to be concerned with the impropriety of the assignments of Judge McNelis to courts of record.

A

With regard to the cause of action for Judge Gilbert's alleged failure to comply with the disclosure requirements of the PRA, plaintiff alleged: "Defendant GILBERT also willfully and/or negligently failed or refused to properly report in his 1984 Statement of Economic Interest various matters, including but not limited to a personal school loan with Crocker National Bank, and said amount is approximately several thousand dollars, and that amount is likewise required to be repaid or refunded to the State of California, County of Butte, or Plaintiff, as trustee for the citizens of Butte County and their court system."

Among the several declared purposes of the PRA is the following: "Assets and income of public officials which may be materially affected by their official actions should be disclosed and in appropriate circumstances the officials should be disqualified from acting in order that conflicts of interest may be avoided." (§ 81002, subd. (c).) In furtherance of this and other purposes, a disclosure procedure is mandated under the PRA. Under these disclosure provisions, "Every person who holds an office specified in Section 87200 shall, each year . . . , file a statement disclosing his investments, his interests in real property and his income during the period since the previous statement filed under this section [or the statement filed on assuming the office]." (§ 87203.) The manner in which the income is to be disclosed is specified in section 87207. The term "income" is a word of art under the PRA and hence is specially defined. "(a) 'Income' means, except as provided in subdivision (b), a payment received, including but not limited to any salary, wage, advance, dividend, interest, rent, proceeds from any sale, gift, . . . loan, forgiveness or payment of indebtedness received by the filer, reimbursement for expenses, per diem, or contribution to an insurance or pension program paid by any person other than an employer, and including any community property interest in the income of a spouse. Income also includes an outstanding loan. . . . (b) 'Income' also does not include: . . . (8) Any loan . . . from a commercial lending institution which [is] made in

the lender's regular course of business on terms available to members of the public without regard to official status if: . . . (B) The balance owed does not exceed . . . ($10,000)." (§ 82030.)

A civil right of action against any violator of these requirements is provided to any person of the jurisdiction in the amount of the violation so long as 40 days' notice is given the appropriate civil prosecutor, in this case the Butte County District Attorney, and the prosecutor does not act. (§§ 91001, 91004, 91007.)[4] Plaintiff alleged that he properly gave notice to the Butte County District Attorney more than 40 days before the institution of this lawsuit and the prosecutor has failed to act.

■ Plaintiff argues that since his complaint properly alleged that Judge Gilbert violated the reporting requirements of the PRA, the defendant judge's assertion that he was not required to report his loan from Crocker Bank could not be determined on demurrer. Judge Gilbert counters that the trial court "quite properly took judicial notice of a sworn affidavit indicating that 'the loan in question was a regular bank loan made to students, . . .' Application of this exception to the Political Reform Act's disclosure requirement to the facts of this case properly enabled the court to determine that no legal cognizable controversy existed between the parties as a matter of law." Plaintiff has the better argument.

A demurrer lies "[w]hen any ground for objection to a complaint, . . . appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, . . . ." (Code Civ. Proc., § 430.30, subd. (a).) Consequently, the "demurrer tests the pleading alone and not the evidence or other extrinsic matters which do not appear on the face of the pleading or cannot be properly inferred from the factual allegations of the complaint. ■ This principle means that if the pleading sufficiently states a cause of action the demurrer cannot be granted on the basis of a showing of extrinsic matters by inference from attached exhibits, affidavits or otherwise except those matters which are subject to judicial notice." (*Executive Landscape Corp.* v. *San Vicente Country Villas IV Assn.* (1983) 145 Cal.App.3d 496, 499 [193 Cal.Rptr. 377].)

As we have noted, the trial court sustained Judge Gilbert's general demurrer to the PRA cause of action by taking judicial notice of a declaration in a companion case which indicated that the loan in question was exempt as a regular bank loan made to students. Although a court is authorized to take judicial notice in connection with a demurrer (Code Civ. Proc.,

---

[4] It is true that plaintiff has failed to serve a copy of this complaint on the Fair Political Practices Commission as required by section 91007, subdivision (b). However, this is not, as suggested by the defendants, a basis for dismissal of the action. (§ 91007, subd. (c).)

§ 430.30, subd. (a)), it may not judicially notice the truth of assertions in declarations or affidavits filed in court proceedings. ■ "Although in ruling on a demurrer courts may take judicial notice of files in other judicial proceedings, this does not mean that they take judicial notice of the truth of factual matters asserted therein. As stated in *Day* v. *Sharp,* 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918], '". . . There exists a mistaken notion that this means taking judicial notice of the existence of facts asserted in *every document* of a court file, including pleadings and affidavits. However, a court *cannot* take judicial notice of *hearsay allegations* as being true, just because they are part of a court record or file. A court may take judicial notice of the *existence* of each document in a court file, but can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments." ' (Italics in original.)" (*Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873, 879 [138 Cal.Rptr. 426], citations omitted; see also 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1982) § 47.2, p. 1757.) ■ The trial court thus erred in judicially noticing the contents of the affidavit for the truth of the matters asserted and then sustaining the demurrer on that ground.

■ For the same reason, the court erred in granting the motion for judgment on the pleadings as to this cause of action. ■ A motion for judgment on the pleadings "is made on the same grounds, and is decided on the same basis, as a general demurrer, i.e., it will be granted only if the complaint on its face fails to state a cause of action." (5 Witkin, Cal. Procedure (3d ed. 1985) Pleadings, § 953, pp. 385-386.) ■ Because the complaint stated a cause of action on its face and was not otherwise defeated by matters properly subject to judicial notice, this motion should have been denied as well.

This error is not saved by the rule of pleading that "[w]here a party relies for recovery upon a purely statutory liability it is indispensable that he plead facts demonstrating his right to recover under the statute. The complaint must plead every fact which is essential to the cause of action under the statute. Where a party relies on a statute which contains a limitation in the clause creating and defining the liability, . . . such limitation must be negatived in the complaint." (*Green* v. *Grimes-Stassforth S. Co.* (1940) 39 Cal.App.2d 52, 56 [102 P.2d 452].) ■ The *Green* rule, however, "only applies to statutes which define the right or liability and also contain the exception in the enabling clause itself. Where the exception is found in a subsequent section of the act, it need not be negatived in the initial pleading." (*G.H.I.I.* v. *MTS, Inc.* (1983) 147 Cal.App.3d 256, 273 [195 Cal.Rptr. 211, 41 A.L.R.4th 653].) ■ Here the exception is found in the statute defining income and not in the enabling statute itself. Consequently, plaintiff was not required under the rules of pleading to negate the exception in

his complaint. Thus, the only basis for sustaining the general demurrer was the erroneously noticed affidavit.

It may well be, as counsel for Judge Gilbert asserted in his memorandum in support of the demurrer, that plaintiff cannot prove this cause of action because "[i]n fact, the two loans in question were made more than a decade before Judge Gilbert assumed an 'official' status—as a superior court judge—and had an outstanding balance of less than two and one-half percent of the minimum reporting balance required by the act."[5] ■ But the question of proof cannot be resolved on a demurrer where all properly pled allegations "are taken as true even though their proof appears unlikely." (*Stanson* v. *Brown* (1975) 49 Cal.App.3d 812, 814 [122 Cal.Rptr. 862], citation omitted.) ■ Since the general demurrer was improperly sustained, the judgment of dismissal of this cause of action must fall with it.

## B

We turn next to the claim that Judge McNelis violated the PRA by failing to disclose "his public employment as a teacher/instructor at Butte College" either in the 1985 disclosure statement or during the years in which plaintiff alleged Judge McNelis was subject to the disclosure requirements of the PRA but did not file any statements. Plaintiff alleged all this income is consequently forfeit under section 91004.

■ These allegations fail to state a cause of action because on their face they establish that these earnings were not reportable income under the PRA. As we have noted, the term "income" has a special meaning under the PRA. As defined there, income "does not include: . . . (2) Salary and reimbursement for expenses or per diem received from a state, local, or federal government agency and reimbursement for travel expenses and per diem received from bona fide educational, academic or charitable organization." (§ 82030, subd. (b).) By alleging Judge McNelis's earnings were from a community college, which is a local governmental agency, plaintiff has pled himself outside the statute's ambit.

Plaintiff attempts to avoid this effect in two ways. First, he gives a bizarre interpretation to this straightforward language, claiming that *public* educa-

---

[5] Indeed, this cause of action may well turn out to be frivolous. In his declaration for summary judgment, Judge Gilbert averred that in August 1971 he borrowed $1,500 from Crocker National Bank to help defray his law school expenses. In November 1972 he borrowed an additional $1,500 to continue his legal education. At the time he filed his Statement of Economic Interests in 1984, the total outstanding balance on the loans was $224.63. These loans, the judge further declared, were made in the regular course of business by the bank on terms available to any member of the public. Because discovery was stayed by the trial court, plaintiff did not file any response to the summary judgment motion and the trial court did not decide it. We therefore have no occasion to pass upon its merits.

tional organizations come only within the second half of the sentence which in turn exempts only travel expenses and per diem from disclosure. Thus, as he reads it, this statutory exemption does not apply to salaries. This is an untenable and unreasonable interpretation. There is no basis for interpreting the phrase "state [or] local . . . government" as somehow excluding educational institutions from its broad reach. Thus, the second half of the sentence can be read only as *expanding* the exception for public income to include reimbursement for travel expenses and per diem received from *private* educational, academic, or charitable organizations.

His second argument is no more persuasive. He claims that since a judge of a court of record is precluded from holding public employment of a nonjudicial nature (former Cal. Const., art. VI, § 17), section 82030's exclusion of public employment from reportable income impliedly does not apply to the disclosure obligation of judges of courts of record. We are urged to read such an undetectable distinction into the statute as a prophylactic measure forcing errant judges to disclose such employment. Contrary to plaintiff's importuning, we perceive no need to "harmonize" the apple prohibiting public employment with the orange exempting public employment earnings from disclosure. The statutes imposing a duty to file annual disclosure statements are not limited to judges. (§§ 87200; 87203.) Instead, they presently apply also to "elected state officers, . . . members of the Public Utilities Commission, members of the State Energy Resources Conservation and Development Commission, members of the Fair Political Practices Commission, members of the California Coastal Commission, members of planning commissions, members of the board of supervisors, district attorneys, county counsels, and chief administrative officers of counties, mayors, city managers, city attorneys, chief administrative officers and members of city councils of cities, and to candidates for any of these offices at any election." (§ 87200.) We decline to accept plaintiff's urgings that the statute ought to be construed one way for judges and another for all other public officials and candidates. Under the clearest of statutory terms, what is income for one is income for all. Nothing in the PRA even remotely suggests that the statutory definition of "income" should not apply to judges. Nor is there anything in the state Constitution implying the need for any such reading. The constitutional proscription against any public employment other than a judicial one by judges long predates the enactment of the PRA and addresses different institutional concerns. ■ The purposes of this constitutional restriction on judges are "(1) to save the judges from the 'entanglements, at times the partisan suspicions' which may result when a judge engages in the extrajudicial activity of campaigning for public office; and (2) 'to conserve the time of the judges for the performance of their work' so as not to 'embarrass, if not in fact impede, the orderly and proper discharge of their judicial functions.' " (*Alex* v. *County of Los Angeles*

(1973) 35 Cal.App.3d 994, 1001 [111 Cal.Rptr. 285], citation omitted.) In contrast, one of the central purposes of the disclosure requirements is to insure that public officials "perform their duties in an impartial manner, free from bias caused by their own financial interests or the financial interests of persons who have supported them." (§ 81001, subd. (b).) These similar but separate provisions, like parallel lines in Euclidean geometry, do not intersect and hence need not be construed to avoid any conflicting cross-over.

██ █ ██ Since Judge McNelis had no obligation under the PRA to report his Butte College income, no violation was alleged and the demurrer was properly sustained as to this cause of action.[6] And because there is no way the income at issue could ever come within the disclosure requirement of the PRA, the demurrer was properly sustained without leave to amend. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

## II

### PROCEDURAL MATTERS AND DEFENSES*

. . . . . . . . . . . . . . . . . . . . .

## III

### ASSIGNMENT CONSPIRACY

We come at last to the merits of the assignment conspiracy. Here we address plaintiff's surviving prayers for a declaration that Judge McNelis cannot be assigned to courts of record, for a writ of mandate precluding Judge Gilbert from requesting such assignments to the superior court, for a writ of prohibition preventing Judge McNelis from accepting such assignments to municipal or superior courts, and for a declaration that Judge

---

[6]Plaintiff's final PRA cause of action alleged that Judge McNelis, since September 1980, has accepted blanket assignments to the municipal court and "while assigned to the Chico Municipal Court as a court of record judge, has refused or failed to prepare and file the required yearly or periodic Statements of Economic Interests (Form 721) in accordance with Government Code, Section 87200." He further alleged that since April 1984, Judge McNelis has accepted assignments of a substantial nature to the Butte County Superior Court and, until the new law mandated all judges to file, refused and failed to prepare and file the required Statements of Economic Interests. Since these allegations are inextricably intertwined with the underlying validity of the assignments, we consider them in part III. For the reasons stated there, we hold these allegations failed to state a cause of action under the PRA.

*See footnote, *ante,* page 852.

McNelis violated the PRA for the years 1980-1984 by failing to file disclosure statements (along with whatever damages can be claimed under the PRA). To resolve this dispute between plaintiff and the defendant jurists, we must now confront the interplay between various provisions of article VI of the California Constitution.

Article VI of the state Constitution deals with the judicial branch of government and vests the judicial power of California "in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts." (Cal. Const., art. VI, § 1.) Judicial prohibitions are found in section 17 of this article. At the time of this dispute section 17 provided in relevant part: "A judge of a court of record may not practice law and during the term for which the judge was selected is ineligible for public employment or public office other than judicial employment or judicial office."[10] Section 9 of that article further provides in pertinent part that "[e]very person admitted and licensed to practice law in this State is and shall be a member of the State Bar except while holding office as a judge of a court of record." At the time of this controversy and until January 1, 1990, justice courts are not courts of record. Under the controlling constitutional definition, "[a]ll except justice courts are courts of record." (Former Cal. Const., art. VI, § 1.)

Judicial administration is covered in section 6 of article VI. Under this section the Chief Justice is charged with the duty to "seek to expedite judicial business and to equalize the work of judges." In furtherance of that charge, the Chief Justice has been granted the power of judicial assignment. "The Chief Justice may provide for the assignment of any judge to another court but only with the judge's consent if the court is of lower jurisdiction." (Cal. Const., art. VI, § 6.) The assignment power of the Chief Justice is statutorily augmented by section 68548. This section reads: "Each judge assigned by the Chairman of the Judicial Council [the Chief Justice] to another court of a like or higher jurisdiction pursuant to Section 6, Article VI, of the State Constitution has no authority to refuse such assignment and shall forthwith accept such assignment and shall sit and hold court as so assigned."

But this sweeping power of assignment is necessarily limited by the eligibility criteria contained in article VI for judicial office since the Chief

---

[10] At the November 1988 general election, the electorate also passed Proposition 94, another constitutional amendment proposed by the Legislature. This measure amended article VI, section 17 of the California Constitution to provide that a judge of a court of record may accept a part-time teaching position. As amended, the relevant part of this section now reads: "A judge of a court of record may not practice law and during the term for which the judge was selected is ineligible for public employment or public office other than judicial employment or judicial office, except a judge of a court of record may accept a part-time teaching position that is outside the normal hours of his or her judicial position and that does not interfere with the regular performance of his or her judicial duties while holding office." (Stats. 1988 (1987-1988 Reg. Sess.) Res. ch. 70.)

Justice may not assign an ineligible judge to a court of record. (See *Stewart v. Bird* (1979) 100 Cal.App.3d 215 [160 Cal.Rptr. 660].) Eligibility for service on a court of record is governed by section 15 of article VI. (*Department of Forestry* v. *Terry* (1981) 124 Cal.App.3d 140, 148 [177 Cal.Rptr. 92].) This section provides in pertinent part: "A person is ineligible to be a judge of a court of record unless for 5 years immediately preceding selection to a municipal court or 10 years immediately preceding selection to other courts, the person has been a member of the State Bar or served as a judge of a court of record in this State. *A judge eligible for municipal court service may be assigned by the Chief Justice to serve on any court.*" (Italics ours.) As the high court has counseled, the assignment power of the Chief Justice must be read in light of this restriction. (*Edler* v. *Hollopeter* (1931) 214 Cal. 427 [6 P.2d 245].) "This section [the predecessor of section 15] must be construed along with the other sections above referred to and given due effect and to this end it must be held that no judge of inferior jurisdiction may be assigned for duty to a higher jurisdiction unless he meets the test above prescribed for persons who may occupy the higher judicial positions. In other words, if a judge of an inferior court is assigned to a higher court, he may not serve in that capacity unless he shall have been admitted to practice before the Supreme Court of this state for a period of at least five years immediately preceding his election or appointment to the office then held by him." (*Id.,* at p. 430; see also 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 334, pp. 348-349.)

Although plaintiff continually refers to Judge McNelis as "ineligible," this is a mischaracterization. Since Judge McNelis has been a member of the State Bar since June 27, 1975 (a fact we judicially note), by the end of June 1980 he was *eligible* to become a member of the municipal court bench and thus was a judge who could properly be assigned by the Chief Justice to any court. (Cal. Const., art. VI, § 15; *Terry, supra,* 124 Cal.App.3d at p. 148.)

This mischaracterization aside, the real gist of plaintiff's argument is that when Judge McNelis is assigned to a court of record he must comply with the same restrictions as an incumbent judge of that court. For judges of courts of record this includes suspension of membership in the State Bar (Cal. Const., art. VI, § 9), forsaking the practice of law or the holding of any other public employment or office (former Cal. Const., art. VI, § 17), and filing a disclosure statement under the PRA. (§ 87200.) Apparently an adherent of the "if it looks like a duck, waddles like a duck, and quacks like a duck, it must therefore be a duck" school of logic, plaintiff argues that because Judge McNelis has been assigned to sit as a judge of a court of record and looks, acts and talks like an incumbent he therefore must be one. Consequently, so the argument goes, he is obligated to meet all the requirements of an incumbent.

 It is true that "[a] duly assigned judge pro tempore generally has the same power and authority . . . as a regular judge of the court to which he . . . is assigned." (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 483 [159 Cal.Rptr. 494, 601 P.2d 1030].) But the mere fact that the assigned judge acts with the authority of an incumbent member of the court to which he is assigned does not transform him into an incumbent of that court; he is simply invested "with no other or different official relation to such courts than that held by the already regularly constituted members thereof . . . in order, in that relation, to exercise the judicial function." (*Fay* v. *District Court of Appeal* [1927] 200 Cal. 522, 540 [254 P. 896].) By contrast, the sole means by which one can become a regularly constituted incumbent of a court of record is through election or appointment by the governor to a vacancy. (Cal. Const., art. VI, § 16.) Assignment thus does not make a judge an incumbent, just as acting in the Governor's absence does not make the Lieutenant Governor the Governor of California. The Lieutenant Governor becomes Governor only when a vacancy occurs in the office of Governor and a justice court judge becomes an incumbent of a higher court only when elected or appointed to that office. (See Cal. Const., art. V, § 10; art. VI, § 16.) Though acting with the authority of the office, the judge does not on that account become the incumbent officeholder. An assigned judge therefore need not satisfy the restrictions on the officeholder.[11] This construction is implicit in a judge's suspension from the State Bar "while holding office as a judge of a court of record." (Cal. Const., art. VI, § 9.) By the same token, a temporary assignment to a court of record does not result in an automatic suspension from the bar. In short, an assigned judge does not hold the office of the higher court; he merely exercises the power of the judicial position during the temporary period of assignment. Consequently, the membership of a justice court judge in the State Bar is not terminated upon his assignment to a court of record.

No other interpretation can be sustained. Since, as noted, an assigned judge has no authority on his own to refuse an assignment to a higher court, under plaintiff's construction a justice court judge would be forced to resign his membership in the State Bar and give up any public employment whenever he is assigned to a court of record, regardless of how abbreviated the assignment might be and regardless of the frequency of the assignments. To prevent such disruptions, he either would have to forego public employment or the active practice of law entirely and thus be forced indirectly to comply with restrictions to which he is not subject explicitly, or he would have to

---

[11] Plaintiff makes the specious analogy an assigned judge must abide by the restrictions on an incumbent judge because the assigned judge must "abide by all of the standards of judicial conduct, and by the ordinary rules of court, as well as the traditionally accepted rules of procedure and evidence." The first of these binds a judge of any status; the remainder are limitations upon the judicial power and not the incumbent. The analogy thus fails.

forego his judgeship. We decline to create such a conundrum out of our Constitution.

Moreover, if plaintiff's construction were correct, it would nullify the provisions of section 21 of article VI. This section provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." Following plaintiff's reasoning, the temporary judge, like the assigned judge, would become an incumbent of the court and hence also subject to the restrictions against the practice of law and continued membership in the bar. To avoid this, the temporary judge would be compelled to resign from the bar and by that act would be ineligible to become a temporary judge. We reject such a nonsensical, catch-22 construction of the Constitution.

It may be true, as argued by plaintiff, that an assignment might conceivably result in a "loophole" where an assigned judge may sit for substantial periods of time on a court of record without complying with the restrictions under which an incumbent judge would operate. But this lacuna in the judicial structure, if it may be said to exist, is one we believe was contemplated and countenanced by the Constitution on the assumption the temporary nature of assignments would inevitably render the service de minimis. As the Supreme Court noted long ago, it must be "taken for granted" that an assignment made in proper exercise of the wise discretion of the Chief Justice will not continue indefinitely. (*Pickens* v. *Johnson* (1954) 42 Cal.2d 399, 406 [267 P.2d 801].)

■ Since Judge McNelis was eligible for assignment and was not required to comply with the restrictions applicable to an incumbent judge of a court of record, it was proper for Judge Gilbert to recommend him for assignment to the superior court. It also follows that it was proper for Judge McNelis to accept assignments to superior or municipal courts. It further follows that, not being a member of a court of record, there was no requirement he comply with the PRA in the years before 1985. The demurrer was therefore properly sustained as to all causes of action predicated upon the assignment of Judge McNelis, including the declaratory relief count.
■ Under the circumstances of this case, the declaratory relief cause of action is governed by the special rule of appellate procedure that "where the issue is purely one of law, if the reviewing court agreed with the trial court's resolution of the issue it would be an idle act to reverse the judgment of dismissal for a trial on the merits. In such cases the merits of the legal controversy may be considered on an appeal from a judgment of dismissal following an order sustaining a demurrer without leave to amend and the opinion of the reviewing court will constitute the declaration of the legal

rights and duties of the parties concerning the matter in controversy." (*Taschner* v. *City Council* (1973) 31 Cal.App.3d 48, 57 [107 Cal.Rptr. 214]; accord, 5 Witkin, Cal. Procedure, *supra,* § 826, p. 270.) Since only issues of law were tendered on that part of declaratory relief action involving assignments, this opinion will constitute the declaration of the legal rights and duties of the parties concerning that controversy.[12]

## IV

### HEARING ON SANCTIONS*

. . . . . . . . . . . . . . . . . . . . .

## V

### THE SANCTIONS AWARD

We turn next to the award of sanctions. Plaintiff attacks the award on the ground that Code of Civil Procedure section 128.5 cannot be used to punish a litigant and that in any event the claimed violations of the Rules of Professional Conduct relied upon by the lower court do not support the award.[14]

Following the sanctions hearing, the trial court concluded that "plaintiff's complaint was both frivolous and interposed for an improper purpose." With respect to Judge Gilbert, the court found that plaintiff "singled out and named the Honorable Roger G. Gilbert as a defendant in this action, alleging certain acts that were identical to long-standing, accepted procedures of at least two other presiding judges in the same jurisdiction.

---

[12] Our disposition, finding no liability based upon the assignment of Judge McNelis, renders unnecessary any discussion about the propriety of the conspiracy allegation, the propriety of the allegation of joint liability under section 91006 for the PRA violations, or the sufficiency of the punitive damages allegation.

* See footnote, *ante,* at page 852.

[14] The trial court awarded attorney fees under both Code of Civil Procedure section 128.5 and Government Code section 91012. The latter provision, a part of the PRA, provides: "The court may award to a plaintiff or defendant other than an agency, who prevails in any action authorized by this title his costs of litigation, including reasonable attorney's fees." Cases construing this statute have held that prevailing defendants may be awarded attorney fees only if the suit was frivolous, unreasonable, brought in bad faith or was otherwise without foundation. (*People* v. *Roger Hedgecock for Mayor Com.* (1986) 183 Cal.App.3d 810, 815-817 [228 Cal.Rptr. 424]; *Thirteen Committee* v. *Weinreb* (1985) 168 Cal.App.3d 528, 538 [214 Cal.Rptr. 297].) Since we uphold the sustainable portions of the sanctions award under Code of Civil Procedure section 128.5, we have no occasion to consider sanctions permitted under the PRA.

Naming Judge Gilbert alone was contemporaneous with plaintiff's announced decision to run for office against him. This singling out of Judge Gilbert and not joining the other presiding judges is evidence of plaintiff's subjective malicious intent to injure and to harass this defendant and was done solely out of spite." It further found that "Judge Gilbert's acceptance of a Justice Court Judge on assignment to Superior Court was in accordance with long-standing practice throughout the State recognized by reported appellate decisions as the law of this State. In alleging a 'conspiracy' on the part of Judge Gilbert, the plaintiff seeks to discredit this practice. Contrary to the Rules of Professional Conduct, the plaintiff, while claiming 'law reform,' did not state that the law, as it exists and is interpreted, is contrary to his position, nor did he argue in good faith that the law should be changed, nor did he offer persuasive reasons why a change in the law is desirable."

With respect to Judge McNelis, the court found that "[p]laintiff claimed that Judge McNelis violated the law by failing to file economic reports prior to the time that the Fair Political Practices Act provisions were specifically extended to include Justice Court Judges. This claim did not meet the specific requirements of Rule of Professional Conduct 2-110 (B)." The court further found that "[p]laintiff's claim that Judge McNelis violated the law by failing to report his teaching income was not in compliance with Rule of Professional Conduct 2-110 (B)."[15]

Code of Civil Procedure section 128.5, subdivision (a) provides in relevant part: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." The term "frivolous" is defined to mean "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b)(2).) The words "actions or tactics" in turn "include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint." (Code Civ. Proc., § 128.5, subd. (b)(1).)

We think it self-evident that a completely successful lawsuit can never be characterized as a "bad faith action" under this statute. By definition and

---

[15] This ethical canon provides: "A member of the State Bar shall not seek or accept employment to accomplish any of the following objectives, nor shall the member do so if he knows or should know that the person solicited for or offering the employment wishes to accomplish any of the following objectives: [¶] (A) Bring a legal action, conduct a defense, or assert a position in litigation, or otherwise take steps, solely for the purpose of harassing or maliciously injuring any person or to prosecute or defend a case solely out of spite. [¶] (B) Present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by good faith argument for an extension, modification or reversal of existing law."

the rules of logic, such a meritorious suit could never be "totally and completely without merit." Nor can such an action be said to have been brought "for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b)(2)(B).) Much of the Code of Civil Procedure can be read only as a legislative authorization to institute legal proceedings to enforce rights, redress injuries and to otherwise resolve disputes peacefully. Moreover, the right to seek legal redress in the courts springs from a constitutional source. ▪▪▪ The right "to petition the Government for a redress of grievances" is one of the freedoms protected by the Bill of Rights. (U.S. Const., 1st Amend.) This constitutional right of petition extends to the courts, the third branch of government. "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition." (*California Transport* v. *Trucking Unlimited* (1972) 404 U.S. 508, 510 [30 L.Ed.2d 642, 646, 92 S.Ct. 609].) It therefore follows that the exercise of this constitutional right by the institution of a winning lawsuit brought for the primary purpose of enforcing one's legal rights cannot be sanctioned no matter what subsidiary motives the litigator may harbor.

As we have explained, in the procedural posture of this case, plaintiff's cause of action against Judge Gilbert under the PRA has not been shown to be meritless and hence remains presumptively meritorious. Consequently, that portion of plaintiff's complaint cannot be the subject of sanctions at this nascent stage of the proceedings. Thus, only the remaining portions of plaintiff's complaint are subject to possible sanctions for frivolousness.

▪▪▪ The threshold question then is whether sanctions may be awarded under this section when some but not all of the causes of action alleged in a complaint are frivolous. We conclude that they may. First of all, nothing in the statute limits bad-faith "actions or tactics" to the entire complaint. Although that phrase includes "the filing and service of a complaint," by the terms of the statute it is "not limited to" that inclusive pleading. Secondly, the statute permits the imposition of sanctions when motions or other tactics are frivolous or made for the purpose of causing unnecessary delay even though the underlying action may be entirely meritorious. It would be anomalous to permit sanctions in those circumstances and yet deny them when an utterly frivolous and bad-faith cause of action is joined with a meritorious one. Thirdly, sanctions have been imposed in analogous circumstances for a partially frivolous appeal. (*Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997, 1010 [205 Cal.Rptr. 532] ["Sanctions for an appeal which is partially frivolous are appropriate if the frivolous claims are

a *significant* and *material* part of the appeal."].)[16] By a parity of reasoning, sanctions should also be imposable for filing and serving or otherwise prosecuting a partially frivolous complaint.

Having crossed that threshold, we next turn to the merits of the sanctions award. "Section 128.5 permits the trial court to impose sanctions under certain narrowly defined conditions. Sanctions are warranted only if the moving party meets its burden of proving that the opposing party's action or tactic was (1) totally and completely without merit, measured by the objective, 'reasonable attorney' standard, or (2) motivated solely by an intention to harass or cause unnecessary delay, measured by a subjective standard. Whether sanctions are warranted depends on an evaluation of all the circumstances surrounding the questioned action." (*Weisman* v. *Bower* (1987) 193 Cal.App.3d 1231, 1236 [238 Cal.Rptr. 756], citations and fn. omitted.) Thus, "an action is deemed frivolous or in bad faith if it is prosecuted for improper motive (including harassment or delay) *or* if it is totally and completely devoid of merit. The standard of determining whether a lawsuit is frivolous is an objective one: a suit indisputably has no merit only 'where any reasonable attorney would agree that the action is totally and completely without merit.'" (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 12 [244 Cal.Rptr. 581], citations omitted.)

On the other hand, "once a party shows that his or her action was arguably meritorious (under the circumstances and in light of existing standards for the particular area of law within which the action was taken), the logical conclusion is that the party's motive was probably not *solely* to harass or cause unnecessary delay, and that sanctions are probably not warranted. Of course, the fact that an action is arguably meritorious *is not* conclusive proof that the action was not brought solely to harass or delay. However, the party moving for sanctions has the burden of proving that the arguably meritorious action was taken for improper motives. (See Evid. Code, § 500.)" (*Weisman* v. *Bower, supra,* 193 Cal.App.3d at p. 1237.)

We apply these standards first to the PRA cause of action against Judge McNelis and then to the assignment conspiracy. The trial court found that the claims against Judge McNelis were both objectively without

---

[16] In *Maple Properties,* the trial court dismissed the entire complaint and plaintiff appealed. On appeal, plaintiff contended that even if some of its claims were frivolous sanctions could not be levied for prosecuting its appeal because there were other viable causes of action. Rejecting that contention, the appellate court responded: "Appellant's argument could be carried to an illogical extreme. If an appeal consists of 100 causes of action and 99 of said actions were frivolous, then the appeal could not be *totally* frivolous because one cause of action had merit. Therefore, we must look to the entire character of the appeal to determine whether the frivolous aspects are significant and material such as to warrant sanctions because the appeal was partially frivolous." (*Maple Properties, supra,* 158 Cal.App.3d at p. 1009, fn. 12.)

any merit and were asserted solely for the purpose of harassing the judge. That finding is amply supported. In our view, any reasonable attorney would agree that the PRA cause of action against Judge McNelis was totally and completely without merit. As we have already explained, the PRA had no conceivable application to Judge McNelis. Notwithstanding plaintiff's bizarre and disingenuous construction of the straightforward statutory provisions, the PRA claim against Judge McNelis, measured by an objective standard, can only be described as utterly meritless. By citing the Rules of Professional Conduct, the trial court also implicitly found that plaintiff knowingly brought a claim against Judge McNelis which was neither warranted under existing law nor subject to any good faith argument for revision. Thus, the award of sanctions was justified under both the objective and subjective standards of frivolousness.

The best plaintiff can do to overcome this finding of frivolousness is to claim here as he did below that it was somehow improper to base sanctions upon violations of the Rules of Professional Conduct. Those rules, when approved by the Supreme Court of California, are "binding upon all members of the State Bar, and the wilful breach of any of these rules shall be punishable as provided by law." (Rules Prof. Conduct, rule 1-100.) Moreover, by their terms, "[n]othing in these rules is intended to limit or supersede any provision of law relating to the duties and obligations of attorneys or the consequences of a violation thereof." (*Ibid*.) Plaintiff neglects to explain why the knowing presentation of a claim in litigation which "is not warranted under existing law" and which cannot "be supported by good faith argument for an extension, modification or reversal of existing law" (Rules Prof. Conduct, rule 2-110 (B)) may not constitute evidence that the action was brought "for the sole purpose of harassing an opposing party." (Code Civ. Proc., § 128.5, subd. (b)(2).) After all, it is the *conduct* prohibited by the rule which may amount to a "frivolous" action or tactic, not the mere violation of the rule itself. If that conduct, evaluated in the context of all the circumstances surrounding the questioned action, shows that plaintiff launched this unjustified attack against Judge McNelis in order to harass and embarrass him and for the purpose of furthering plaintiff's own judicial candidacy then nothing prohibits the trial court from relying upon a violation of the Rules of Professional Conduct in assessing whether the statutory standard has been met. Thus, it does not matter that the plaintiff was appearing in pro se and not "as" an attorney in this action. Given the findings of the trial court, the imposition of sanctions for the institution of the frivolous PRA claims against Judge McNelis was both warranted and appropriate.

We examine next the so-called assignment conspiracy. Plaintiff claims his suit was not frivolous because it was a "very serious attempt to

interpret the Constitution of California." To the contrary, we find the underlying premise of plaintiff's claim—that an assigned judge miraculously becomes an incumbent—to be patently untenable and without any redeeming legal merit. It is true that the question of the relationship of the two sections of article VI of the California Constitution had not been judicially passed on and in that sense the question was open. ■ And it is also true that the mere fact that plaintiff's claim lacked precedential support is not the equivalent of a finding that the action was frivolous. (*Jones* v. *Jones* (1986) 179 Cal.App.3d 1011, 1018 [225 Cal.Rptr. 95].) But the converse is equally true. The mere absence of a judicial construction does not by itself make all challenges arguably meritorious. It may well be that the limitation in the United States Constitution that "[n]o person shall be a Senator who shall not have attained to the age of thirty years, . . ." (U.S. Const., art. I, § 3, cl. 3) has not yet been adjudicated by an appellate court. But that fact would not convert a lawsuit seeking a declaration that a 22-year-old aspirant is eligible for election to the United States Senate into a "very serious attempt to interpret the Constitution of the United States." ■ The Chief Justice of California is given explicit constitutional authority to assign a lower court judge to a higher court without the consent of the assigned judge. The short of this controversy is that Judge McNelis was such a judge and hence was properly subject to assignment to the municipal and superior courts of Butte County. No reasonable attorney would have thought otherwise or, to make matters worse, brought an action in his own name to prohibit this legal and long-practiced assignment policy.

Not only was this portion of plaintiff's lawsuit frivolous under the objective standard, it was also motivated, the trial court found, solely by an intention to harass both Judge Gilbert and Judge McNelis. The lower court inferred an evil purpose in filing this suit from the fact that plaintiff singled out Judge Gilbert as a defendant when he did nothing other than to follow a practice long accepted throughout the state. This undisputed fact, when added to the "coincidence" this suit was filed on the same day that plaintiff filed his candidacy for Judge Gilbert's superior court seat in a judicial election, can only give an indelible taint of enmity to plaintiff's assignment conspiracy.

■ The award of sanctions for a frivolous action under Code of Civil Procedure section 128.5 is within the sound discretion of the trial court. (*Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1176 [230 Cal.Rptr. 289].) ■ Once imposed, "[t]he test on appeal is whether the trial court has abused the broad discretion to justify our interference with a sanction award." (*Ibid.*) In reviewing that exercise of discretion we are informed by "several policy guidelines: (a) an action that is simply without merit is not by itself sufficient to incur sanctions; (b) an

action involving issues that are arguably correct, but extremely unlikely to prevail, should not incur sanctions; and (c) sanctions should be used sparingly in the clearest of cases to deter the most egregious conduct." (*Id.,* at p. 1177, citing *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651 [183 Cal.Rptr. 508, 646 P.2d 179].) ▆▆ But even given these constraints on the exercise of discretion, the award of sanctions for the palpably frivolous assignment conspiracy was amply supported by the finding of the trial court. Plaintiff's hollow claim of interest in "law reform" with respect to the assignment policy—with no showing how the "reform" would be an improvement—will not dissipate it. Plaintiff also attempts to deflect the fusillade of findings of frivolousness by claiming two opinions of the California Attorney General gave support to his interpretation of the Constitution. However, Acceptance of Public Teaching Position by Former Supreme Court Justice, 67 Ops.Cal.Atty.Gen. 149 (1984) and California Constitution, article VI, section 17, 66 Ops.Cal.Atty.Gen. 440 (1983) are wholly inapposite, since they deal with restrictions on *incumbent* judges of courts of record and whether they continue to apply to a *retired* incumbent throughout the term of office or merely during the tenure in office.

Given the trial court's findings and the dearth of effort by plaintiff to show otherwise, we conclude that a sufficient basis for the award of sanctions under Code of Civil Procedure section 128.5 has been established for all parts of plaintiff's complaint except the PRA cause of action against Judge Gilbert. With that exception, we have no difficulty affirming the lower court's finding that this action was both totally and completely without merit *and* was filed for the purpose of harassment.

This leaves plaintiff's attacks on the manner in which fees were assessed by the lower court.[17] He claims Judge Gilbert's counsel filed his declarations beyond the time limit set by the order to show cause and thus could not provide the basis for the fees. As the time limits of the order to show cause were hardly jurisdictional, we can safely assume the lower court impliedly found good cause for the late filing and received them into evidence. He next claims the materials supplied by Judge McNelis and Judge Gilbert were, respectively, untimely and unverified in violation of former Code of Civil Procedure section 1033. (Stats. 1982, ch. 812, § 2, p. 3102.) That code section applied to *bills of costs,* and has no application to materials submitted in support of sanctions. In characteristic form, plaintiff then renews his sweeping statements made below that these lengthy memoranda demonstrating the attorney labors expended in this action are "unreasonable" and

---

[17] In the course of seven pages of plaintiff's brief on the proprierty of sanctions no less than twelve contentions are summarily advanced. We disregarded most of them because no authority or argument has been offered. (*People* v. *Barry* (1987) 194 Cal.App.3d 158, 178, fn. 17 [239 Cal.Rptr. 349].)

include costs not properly chargeable to this action. However, as he has failed to specify even one instance of improper charging, his contention will not be sustained (particularly in light of the specific separation of such costs by counsel for Judge McNelis). Judge McNelis presented declarations to the lower court of over $11,000 in attorney's fees incurred in this action. Judge Gilbert submitted evidence of attorney's fees in excess of $19,000 incurred with respect to both this suit and the related federal action. There was no abuse of discretion in setting the amount of fees actually awarded based upon the showing made by the defendant jurists. ▪▪▪ However, to the extent that the award of sanctions in favor of Judge Gilbert included an amount for defending the PRA cause of action, the trial court erred in including such an amount for a cause of action not yet found to be frivolous. Because we cannot determine what amount, if any, was awarded for defense of that presumptively meritorious cause of action, we must vacate that award and remand for a redetermination of the amount of sanctions in favor of Judge Gilbert.

## VI

### SANCTIONS ON APPEAL

Judge McNelis requested sanctions for a frivolous appeal in his respondent's brief. Plaintiff took the opportunity to devote a scant two paragraphs in his reply brief to the question, claiming the appeal was not frivolous because the lower court had erred, and even if the lower court were upheld, his issues were arguable under *In re Marriage of Flaherty, supra*, 31 Cal.3d 637. We issued an order to show cause returnable at the time of the oral argument scheduled for this matter, in which we invited materials relevant to our determination whether the appeal should be found frivolous and, if so, the proper amount of attorney's fees payable to Judge McNelis.

▪▪▪ We conclude that sanctions are appropriate since the appeal of the dismissal of the causes of action against Judge McNelis, like the complaint against him, is frivolous. First, for reasons parallel to those found by the trial court, we find that the appeal from the judgment dismissing that part of his action was prosecuted for an improper motive of harassing Judge McNelis. Second, we further find that the appeal of that part of the dismissal indisputably has no merit and that any reasonable attorney would agree this part of the appeal is totally and completely without merit. We have further concluded that, under the circumstances of this case, an award of $2,000 is appropriate for pursuing that portion of the appeal relating to the dismissal of the causes of action against Judge McNelis.

DISPOSITION

That portion of the judgment dismissing the PRA cause of action against Judge Gilbert is reversed. In all other respects, the judgment is affirmed. The order imposing sanctions against plaintiff in favor of Judge McNelis is affirmed. The award of sanctions in the sum of $9,675.15 in favor of Judge Gilbert is reversed and the cause remanded to the trial court with directions to redetermine the amount of those sanctions without regard to the PRA cause of action. Plaintiff is directed to pay Judge McNelis an additional penalty of $2,000 for pursuing a frivolous appeal.

Carr, Acting P. J., and Marler, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 25, 1989.