In re WOLF & VINE, INC., Debtor.

Morris A. WOLF, et al., Plaintiffs,

v.

Arnold KUPETZ, et al., Defendants.

Bankruptcy No. LA 81–17218–SB.

Adv. No. LA 89–1093–SB.

United States Bankruptcy Court, C.D. California.

Aug. 17, 1990.

Richard M. Pachulski of Pachulski, Stang & Ziehl, P.C., for Morris A. Wolf and Raviel R. Wolf.

Marc A. Levinson of Sidley & Austin, for Continental Bank, N.A.

Max Rush of Sulmeyer, Kupetz, Baumann & Rothman, for Arnold L. Kupetz, Trustee.

Thomas Normington, for Levy & Normington.

## OPINION ON MOTION FOR SANCTIONS

SAMUEL L. BUFFORD, Bankruptcy Judge.

## I. INTRODUCTION

This motion raises the issue of whether, after a plaintiff has lost an action based on an issue of first impression in the federal judicial circuit, and on which the law was unsettled when the action was filed, sanctions should be imposed upon counsel for the prevailing defendant for bringing a malicious prosecution action against the losing plaintiff.

▪ Movants Arnold Kupetz ("trustee"), Sulmeyer, Kupetz, Baumann & Rothman ("Sulmeyer"), and Continental Illinois National Bank & Trust Company of Chicago ("Continental Bank") bring this motion for sanctions[1] against plaintiffs Morris and Raviel Wolf ("the Wolfs") and their attorneys after winning summary judgment in this malicious prosecution action, which the Wolfs brought after prevailing in a fraudulent conveyance action brought by the trustee to set aside a leveraged buyout of debtor.

The Court finds that the Wolfs' malicious prosecution complaint, which was filed in state court and removed to this Court, was totally and completely without merit, and that sanctions should be awarded under California Code of Civil Procedure § 128.5 (West 1985). In addition, the Court holds that the Wolfs' pleadings filed in opposition to summary judgment on the complaint were not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and thus merit sanctions under Bankruptcy Rule 9011.

In contrast, the Court finds that both the Wolfs' motion for remand and their motion for withdrawal of reference in this adversary proceeding were well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and thus do not warrant sanctions.

The Court awards sanctions in the amount of $20,000 in favor of Continental Bank, $10,000 in favor of the trustee, and $5,000 in favor of the trustee's general counsel. The Court awards these sanctions against the Wolfs' attorney and not the Wolfs personally.

## II. FACTS

Wolf & Vine, the debtor in this case, was a corporation that designed, manufactured and marketed mannequins. Morris Wolf, the original founder, owned 50% of its stock, and the Marmon Group, Inc. ("Marmon") owned the other 50%.

Morris Wolf managed Wolf & Vine for some thirty years. During this time Wolf & Vine became one of the leading manufacturers of mannequins in the United States. At the age of 73, Morris Wolf decided to retire in 1978 and to sell his ownership in the business. Marmon earlier obtained an option on Wolf's 50% interest in Wolf & Vine should Wolf decide to retire. Marmon, however, decided that it would be too

---

1. The trustee's special counsel Levy & Norminton joined in the motion in an apparent attempt to recover sanctions on its own behalf. Joinder is not a substitute for bringing its own motion. Thus no sanctions motion by Levy & Norminton is before the Court.

costly to manage Wolf & Vine. In consequence, instead of purchasing Wolf's 50% interest, Marmon decided to find a buyer to purchase the entire business.

Marmon began to look for a suitable buyer for the company. In spring of 1979, Marmon located David Adashek, who was interested in purchasing the business. On July 31, 1979 Adashek agreed to pay Wolf and Marmon $3 million for all of the shares of Wolf & Vine. The first $1.1 million was to be paid immediately. The remaining $1.9 million was to be paid in installments over the next two years.

Adashek financed the transaction through what is commonly referred to as a leveraged buyout or "LBO". In a leveraged buyout the purchaser borrows funds to acquire a company and uses the acquired company's assets as security for the loan. The purchaser usually plans to use the cash flow generated from the operations of the company and the sale of assets to make the payments on the loan. Continental Bank, the financial backer of Adashek's leveraged buyout of Wolf & Vine, loaned Adashek $1.1 million and issued letters of credit in favor of Wolf and Marmon for the remaining $1.9 million. Adashek in return gave Continental Bank a security interest in the assets of Wolf & Vine as security for the loan. Wolf was not informed of the leveraged buyout.

Adashek managed Wolf & Vine for the next two years. He expanded advertising and marketing, replaced certain personnel, increased salaries to other personnel, and introduced a new line of mannequins. However, after two years the once prosperous company began to run into financial difficulty. On December 23, 1981 Wolf & Vine filed its Chapter 11 bankruptcy case, which it later converted to a Chapter 7 liquidation.

Arnold L. Kupetz was appointed trustee and employed his law firm Sulmeyer (with Court approval) as general counsel. The trustee also employed Levy & Norminton as special counsel.

In May, 1983 the trustee filed a complaint in the District Court for the Central District of California against the Wolfs, Marmon, and Continental. The complaint alleged that the leveraged buyout and subsequent payments made by Continental Bank to the Wolfs and Marmon constituted fraudulent conveyances, improper distributions to shareholders, breaches of the duty of good faith and fair dealing, and civil conspiracy. The District Court granted partial summary judgment to defendants, and granted a directed verdict for the defendants on the remaining claims. *See Kupetz v. Continental Illinois Nat. Bank & Trust Co.*, 77 B.R. 754 (C.D.Cal.1987). The Ninth Circuit affirmed the District Court's decision. *Kupetz v. Wolf*, 845 F.2d 842 (9th Cir.1988).

The Wolfs then filed an action ("the malicious prosecution action") in Los Angeles County Superior Court against the trustee, his general and special counsel, and Continental Bank. The complaint was signed by Roger L. Gordon as the Wolfs' attorney, on behalf of his law firm Gordon, Edelstein & Krepack. It alleged causes of action for malicious prosecution, abuse of process, breach of fiduciary duty, professional negligence, and negligence of trustee, all arising out of the trustee's pursuit of the fraudulent conveyance action.

The defendants removed the malicious prosecution action from state court to this Court. The defendants then brought motions for summary judgment. The Court granted summary judgment against the Wolfs and in favor of the defendants on all causes of action. The Wolfs have taken an appeal from this judgment. Thereafter, the trustee, general counsel for the trustee, and Continental Bank moved for sanctions against the Wolfs and their attorneys for the filing of the malicious prosecution action. The issue before the Court is whether sanctions should be awarded.

## III. LEGAL ANALYSIS

### A. Applicable Law

▮ California law and bankruptcy law both authorize the Court to sanction litigants and their attorneys for filing frivolous actions or actions brought for an improper purpose.

California Code of Civil Procedure § 128.5(a) (West 1985) provides that a court "may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous...." "Frivolous" is statutorily defined as "totally or completely without merit" or "for the sole purpose of harassing an opposing party." Cal.Civ.Proc.Code § 128.5(b)(2) (West 1985). The standard to determine whether a lawsuit is frivolous is an objective one: an action is frivolous if "any reasonable attorney would agree that the action is totally and completely without merit." *Bach v. McNelis*, 207 Cal.App.3d 852, 876, 255 Cal. Rptr. 232 (1989).

Bankruptcy Rule 9011 also grants the Court authority to sanction parties for filing frivolous actions or actions brought for an improper purpose. Rule 9011 provides in relevant part:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

This rule is essentially similar to Rule 11 of the Federal Rules of Civil Procedure, and bankruptcy courts look to authorities under Rule 11 for guidance in applying Bankruptcy Rule 9011. *Schmiegelow v. Virgil (In re Virgil)*, 110 B.R. 605, 607 (Bankr.N.D. Ga.1989); *Local 11500 v. Akridge (In re Akridge)*, 89 B.R. 66, 68 (Bankr. 9th Cir. 1988).

Under Ninth Circuit precedent, Rule 11 sanctions are imposed to punish those who file pleadings, motions and other papers that (1) constitute frivolous filings or (2) use judicial procedures as a tool for harassment. *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 792 (9th Cir. 1989). It is the "frivolous filings" branch of Rule 11 that is at issue in the case before the Court. Two principles govern the application of the rule to frivolous filings. First, the proper scope of inquiry is the entire pleading, not merely a particular argument or ground for relief. *Id.; accord, Chevy Chase, F.S.B. v. Kullgren (In re Kullgren)*, 109 B.R. 949, 955 (Bankr. C.D.Cal.1990). A single non-frivolous claim will save a complaint from Rule 11 sanctions. *Townsend*, at 795. Similarly, the improper inclusion of a party in a complaint which properly includes other parties cannot render the complaint frivolous for the purposes of Rule 11. *Id.* Second, the mere fact that a claim does not prevail is not a sufficient basis for imposing Rule 11 sanctions. *Id.*, at 792; *Kullgren* at 955.

The standard under Rule 11 and Rule 9011 is an objective one: sanctions should be imposed if "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading [or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification or reversal of existing law, or if a pleading [or other paper] has been interposed for any improper purpose." *Featherston v. Goldman (In re D.C. Sullivan Co.)*, 843 F.2d 596, 599 (1st Cir.1988); *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir.1986) (Rule 11); *Mazzocco v. Smith (In re Smith)*, 82 B.R. 113, 114 (D.Ariz.1988).

The central purpose of Rule 9011 is to deter baseless filings, and thus to streamline the administration and procedure of the federal courts. *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) (Rule 11).

The sanction may, but need not, include payment of the expenses of the other party. *Id.*

While section 128.5 and Rule 9011 are both judged by an objective standard, the two statutes have several important differences. These differences relate to the judge's discretion to award sanctions, who may be sanctioned, and the type of sanctions that may be awarded.

The first difference between the two statutes concerns the discretion of the judge to award to sanctions. Under section 128.5 the court "may" order a party to pay reasonable expenses if the statute has been violated. This statute thus gives the court discretion whether to grant or deny sanctions. Under Rule 9011, in contrast, sanctions are mandatory if the court determines that a violation has occurred. *See, e.g., In re Cedar Falls Hotel Properties,* 102 B.R. 1009, 1018 (N.D.Iowa 1989).

The second difference between the two statutes concerns who may be sanctioned. Under Rule 9011, if a pleading violates the provisions of the rule, the court has the authority to sanction "the person who signed it, a represented party, or both." The United States Supreme Court, recently interpreting this language, held that sanctions may only be awarded against the attorney who has signed the pleadings, and not the attorney's law firm. *Pavelic & Leflore v. Marvel Entertainment Group,* 493 U.S. ——, 110 S.Ct. 456, 459–60, 107 L.Ed.2d 438 (1989). Under section 128.5, the court has the authority to sanction the "party's attorney". Since a client frequently hires the law firm and not the individual lawyer, this language may give the court the authority to sanction the law firm as well as the individual. However, no California case law on this subject has been discovered.

Finally, the remedies awarded under section 128.5 and under Rule 9011 may differ substantially. Under section 128.5, the court is limited to awarding "reasonable expenses, including attorney's fees." Under Rule 9011, in contrast, the court is given the flexibility to grant any "appropriate sanctions." What is an "appropriate

sanction" will depend upon nature and circumstances of the case.

### B. Pleadings Subject to Sanctions

### 1. The Complaint

The Wolfs originally filed their complaint in the Los Angeles County Superior Court. The defendants then removed the action to this Court. The first issue before the Court is whether California sanctions law or federal sanctions law applies to a complaint that was filed in state court and removed to federal court.

In *Hurd v. Ralphs Grocery Co.,* 824 F.2d 806 (9th Cir.1987), the Ninth Circuit addressed this issue. In *Hurd* a discharged employee brought an action in state court against his union for breach of the duty of fair representation. The action was removed to the United States District Court. The union thereafter obtained summary judgment and an order imposing sanctions under Rule 11. On appeal the Circuit Court held that sanctions cannot be imposed under Rule 11 for the improper filing of a complaint in state court. *Id.* at 808–09.

This malicious prosecution action was filed in state court and removed to federal court. The holding of the court in *Hurd* thus precludes this Court from applying rule 9011 to the Wolf's complaint. The Court, however, is not powerless to grant sanctions. A federal court may apply state sanctions law where Rule 11 is inapplicable. *Schmitz v. Campbell–Mithun, Inc.,* 124 F.R.D. 189, 192–93 (N.D.Ill. 1989). If state sanctions law does not apply, a plaintiff would be permitted to file baseless papers in a state court action and escape sanctions merely because the defendant subsequently removed the case to federal court. *Id.* This Court holds that section 128.5 supports the award of sanctions as to a complaint that is filed in a California court and removed to this Court.

The next step in our analysis is to apply section 128.5 to the Wolfs' complaint. The Wolfs' complaint stated five causes of action, each of which arose out of the trustee's fraudulent conveyance action to set

aside payments made to Wolf and Marmon. The causes of action were: (1) malicious prosecution, (2) abuse of process, (3) breach of fiduciary duty, (4) professional negligence, and (5) negligence by the trustee.

The entire complaint need not be frivolous for sanctions to be awarded under section 128.5. Sanctions generally may be awarded when any cause of action in the complaint is frivolous. *Bach v. McNelis*, 207 Cal.App.3d 852, 875, 255 Cal.Rptr. 232 (1989).

#### a. *Malicious Prosecution*

The first cause of action in the Wolfs' complaint was for malicious prosecution. Under California law, there are three elements that must be pleaded and proven in an action for malicious prosecution. The action complained of must have been (1) commenced by or at the direction of the defendant and pursued to a legal termination in plaintiff's favor, (2) brought without probable cause and (3) initiated with malice. *See, e.g., Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 871, 765 P.2d 498, 254 Cal.Rptr. 336 (1989); *Bertero v. National General Corp.*, 13 Cal.3d 43, 50, 529 P.2d 608, 118 Cal.Rptr. 184 (1974).

At the time that the trustee filed the underlying fraudulent conveyance action there was a lack of reported case law on the issue of the applicability of fraudulent conveyance law to leveraged buyouts. In *Kupetz v. Wolf*, 845 F.2d 842 (9th Cir.1988), the Ninth Circuit's survey of existing case law included only two cases, both of which were decided after the trustee brought the underlying fraudulent conveyance action in May 1983. *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987); *Credit Managers*

*Association v. The Federal Company*, 629 F.Supp. 175 (C.D.Cal.1985). The Ninth Circuit also cited the trial court decision in *Tabor Court Realty, United States v. Gleneagles Inv. Co.*, 565 F.Supp. 556 (M.D. Pa.1983), which was decided within days of the filing of the underlying complaint, and which tended to support the trustee's theory of the case. While the Ninth Circuit also found four law review articles on the subject, they all dated from 1985 and later. *See* 845 F.2d at 846 n. 4.

The Court holds as a matter of law that there is probable cause to support an action, where the applicable law is unsettled and the facts support a plausible construction of the law. There is probable cause, as defined under California law, whenever "any reasonable attorney would have thought the claim tenable." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 885–86, 765 P.2d 498, 254 Cal.Rptr. 336 (1989).

There was clearly probable cause for the trustee to bring the fraudulent conveyance action against the Wolfs under this standard. At the time the trustee filed the action, it was not reasonable to expect that fraudulent conveyance law would be limited to cases in which there was actual intent to defraud or whether there had to be a pre-transaction creditor. Given the unsettled nature of the law and the trustee's duty to pursue such claims as a representative of the estate, the trustee clearly had probable cause to institute the cause of action.[2]

In addition to lack of probable cause, an action for malicious prosecution must be brought with the requisite malicious intent. Here there was no evidence that the fraudulent conveyance action was maliciously

---

2. Courts are still wrestling with the difficult issues of when the law of fraudulent conveyance can be applied to leveraged buyouts. *See St. Paul Fire & Marine Ins. v. Pepsico, Inc.*, 884 F.2d 688 (2nd Cir.1989); *Kupetz v. Wolf*, 845 F.2d 842 (9th Cir.1988); *Mellon Bank v. Metro Communications, Inc. (In re Metro Communications, Inc.)*, 95 B.R. 921, 934 (W.D.Pa.1989); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488 (N.D.Ill.1988); *Ohio Corrugating Co. v. Security Pacific Business Credit, Inc. (In re Ohio*

*Corrugating Co.)*, 70 B.R. 920 (N.D.Ohio 1987). *See also* Baird & Jackson, "Fraudulent Conveyance Law & Its Proper Domain," 38 Va.L.Rev. 829 (1985); Murdoch, Sartin & Zadek, "Leveraged Buyouts & Fraudulent Transfers: Life After Gleneagles," 43 Bus.Law. 1 (1987); Kirby, McGuinness & Kendell, "Fraudulent Conveyance Concerns in Leveraged Buyout Lending," 43 Bus.Law. 27 (1987); Note, Fraudulent Conveyance Law & Leveraged Buyouts, 87 Colum.L. Rev. 1491 (1987).

motivated. The Wolfs alleged that the trustee's action was brought by defendants for the purpose of "bilking the estate of Wolf & Vine" and for the purpose of "vexing, injuring, harassing and annoying the plaintiffs." There was no evidence to support this bare allegation.

■ This action for malicious prosecution was brought not only against the trustee and the trustee's general counsel, but also against Continental Bank, a co-defendant of the Wolfs in the fraudulent conveyance action. The naming of Continental Bank is even more culpable than the naming of the trustee and trustee's general counsel. Continental was a *defendant* in the underlying malicious prosecution action. The Wolfs claimed that Continental was responsible for the initiation or maintenance of the trustee's action because Continental had entered into a settlement agreement with the trustee. The terms of the settlement agreement provided that Continental had a right to receive 50% of any recovery that the trustee obtained from the Wolfs and that the trustee was required to obtain Continental's consent prior to settling or dismissing the case.

The fact that Continental Bank may have had an interest in the litigation is not enough to support the claim that the fraudulent conveyance action was commenced or directed by Continental Bank. Continental Bank did not withhold its consent to settlement or dismissal of the case. There was absolutely no evidence that Continental did anything to initiate or maintain the action.

■ Another factor weighing in favor of granting sanctions is the fact that the malicious prosecution action was barred by the applicable statute of limitations. An action for malicious prosecution must be filed within one year of the accrual of the cause of action under California Code of Civil Procedure § 340(3). Cal.Civ.Proc. Code § 340(3) (West Supp.1990); *Korody–Colyer Corp. v. General Motors Corp.*, 208 Cal.App.3d 1148, 1150–51, 256 Cal.Rptr. 658 (1989); *Rare Coin Galleries, Inc. v. A-Mark Coin Co.*, 202 Cal.App.3d 330, 334, 248 Cal.Rptr. 341 (1988). The Court has previously granted summary judgment

against the plaintiffs, in part on the grounds that the Wolfs' complaint was filed one day late and thus was untimely under section 340(3).

There was no evidence that Gordon conducted a reasonable inquiry into the facts of this case and the applicable law before filing the malicious prosecution action. If he had, he would have realized that this malicious prosecution action was without factual support and barred by the applicable statute of limitations. The Court holds that the claim for malicious prosecution was totally and completely without merit and is subject to sanctions under section 128.5.

### b. *Abuse of Process*

■ The second cause of action in the Wolfs' complaint was for abuse of process. A cause of action for abuse of process under California law has two elements: (1) an ulterior motive in using the process and (2) the use of the process in an unlawful manner. *Coleman v. Gulf Insurance Group*, 41 Cal.3d 782, 792, 718 P.2d 77, 226 Cal.Rptr. 90 (1986); *Drasin v. Jacoby & Meyers*, 150 Cal.App.3d 481, 485, 197 Cal. Rptr. 768 (1984). It differs from malicious prosecution in that its gist is not the commencing of an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. *Drasin*, supra, at 485, 197 Cal.Rptr. 768; *Prosser & Keeton on the Law of Torts* § 121, at 897 (W. Keeton, ed. 1984).

■ The Wolfs alleged that the trustee brought the fraudulent conveyance action for the ulterior motive of "bilking the estate" by causing the assets to be paid out in the form of attorneys fees and expenses. There was no evidence to support such a claim. The Court has found in granting summary judgment against the Wolfs that the trustee had no ulterior motive in bringing the fraudulent conveyance action. The Court finds that the abuse of process claim was frivolous.

### c. *Breach of Fiduciary Duty*

██ The Wolfs' third cause was for breach of fiduciary duty. The cause of action was brought against the trustee and trustee's general counsel for their respective roles in the prosecution of the fraudulent conveyance action. A trustee owes each creditor of the estate a fiduciary duty. As the court indicated in *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir.1983), "[a] bankruptcy ... trustee is a fiduciary of each creditor of the estate ... As such, he has a duty to treat all creditors fairly and to exercise that measure of care and diligence that an ordinarily prudent person under similar circumstances would exercise."

██ In support of this claim the plaintiffs alleged again that the defendants commenced and maintained the fraudulent conveyance action for the purpose of "dissipating the substantial assets of the estate into said defendants' own hands in the form of attorney's fees and expenses." Once again there is no evidence to support this allegation. As indicated supra, given the unsettled nature of the law and the trustee's duty to pursue such claims as a representative of the estate, the trustee committed no wrongdoing by bringing the fraudulent conveyance action. This Court thus holds that the claim for breach of fiduciary duty as it applied to the trustee was totally and completely without merit and is subject to sanctions under section 128.5.

██ The Wolfs brought this cause of action not only against the trustee, but also against the trustee's general counsel. While applicable law holds that a trustee owes a fiduciary duty to the creditors, it does not follow that the attorneys for the trustee also owe this same duty. There was no attorney-client relationship between Sulmeyer and the Wolfs. Thus, the naming of the trustee's general counsel was also "totally and completely without merit" and subject to sanctions under California Code of Civil Procedure § 128.5.

### d. *Legal Malpractice*

The fourth cause of action was brought against Levy & Norminton, trustee's special counsel, and Sulmeyer, trustee's general counsel, for legal malpractice. The motion before the Court relates only to the malpractice action against Sulmeyer.

██ The elements of legal malpractice, like those of any other actions for negligence, are (1) duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) breach of duty; (3) a proximate causal connection between the negligent conduct and resulting injury; (4) actual loss or damage resulting from that negligence. *Budd v. Nixen*, 6 Cal.3d 195, 200, 491 P.2d 433, 98 Cal.Rptr. 849 (1971); *Zalta v. Billips*, 81 Cal.App.3d 183, 188, 144 Cal.Rptr. 888 (1978).

██ Sulmeyer served as trustee's general counsel. No attorney-client relationship existed between it and the Wolfs. Sulmeyer was not the attorney of record for the trustee in the fraudulent conveyance action: this action was handled by the trustee's special counsel. Sulmeyer never made any appearance for the trustee in the fraudulent conveyance action. It never billed any time to the case. There were no facts to support the Wolfs' allegations that the Sulmeyer firm owed, much less breached, a duty of care to them.

██ In addition, the malpractice action was barred by the California statute of limitations. California Code of Civil Procedure § 340.6(a) provides that:

> An action against an attorney for a wrongful act or omission other than for actual fraud, arising in the performance of professional service shall be commenced within one year after plaintiff discovers, or through the use of reasonable diligence should have discovered the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. ...

The Wolfs, through the use of reasonable diligence, should have discovered the facts constituting the alleged wrongful act at least when the judgment was entered in their favor at the trial court. This was

more than one year before the complaint was filed. This Court thus finds that the complaint was filed a day late, more than one year after the accrual of the alleged cause of action and was clearly barred by the statute of limitations. This Court thus holds that the claim for professional negligence against Sulmeyer was also totally and completely without merit and is subject to sanctions under section 128.5.

### e. *Negligence of the Trustee*

 A bankruptcy trustee enjoys broad immunity from suit when acting within the scope of his or her authority and pursuant to court order. *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir.1989). While a trustee may be liable for negligent or willful acts committed while carrying on a business, the litigation of the fraudulent conveyance lawsuit did not fall within this exception to the broad immunity. In the Wolf's complaint they alleged that plaintiff's actions in bringing the fraudulent conveyance action constituted a "negligent failure to manage the assets of the estate with reasonable skill, care, prudence and diligence, as well as reckless and negligent failure to marshal, protect and preserve the assets of the estate of Wolf & Vine for the benefit of its creditors." Insofar as the Wolfs were complaining of the bringing of the fraudulent conveyance lawsuit, no cause of action lay against the trustee for negligence. The Court holds that the claim for negligence against the trustee was totally and completely without merit.

### 2. Opposition to Summary Judgment

While the court in *Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 808–09 (9th Cir. 1987), held that sanctions cannot be imposed under Rule 11 for filing a paper in state court, sanctions may be imposed in appropriate circumstances for the defense of an action against a subsequent motion for summary judgment filed in federal court. *Id.* at 809. Similarly, in *United States v. Stringfellow*, 911 F.2d 225 (9th Cir.1990), the Ninth Circuit stated that an argument contained in a motion is frivolous under Rule 11 if it is unreasonable when viewed from the perspective of a competent attorney admitted to practice before the applicable court. *Id.*, at 226.

 Since the Wolfs' opposition to summary judgment was filed in this Court, it is subject to the provisions of Rule 9011. The Wolfs' pleadings filed in opposition to summary judgment made the argument that the claims for malicious prosecution, abuse of process and professional negligence were not barred under the statute of limitations. The Court finds that the Wolfs' statute of limitations arguments were frivolous, and not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and thus are subject to sanctions under rule 9011.

### 3. Motions for Remand and for Withdrawal of Reference

Both the motion for remand and the motion for withdrawal of reference were filed in this Court. Bankruptcy Rule 9011 applies to any paper filed in a bankruptcy court. The Court finds, however, that both the motion for remand and the motion for withdrawal of reference were brought in good faith, and that neither warrants sanctions under Rule 9011.

### C. Parties Liable for Sanctions

 The moving parties seek sanctions against the Wolfs and their attorneys. The Court finds that the Wolfs relied on the advice of counsel in filing the malicious prosecution lawsuit. In consequence, the Court finds that they are not liable for sanctions.

 As is indicated above, sanctions under Rule 11 may be imposed only against an attorney who actually signs a pleading that is subject to sanction. Thus Rule 11 sanctions may be awarded against Roger Gordon, because he signed the complaint and the opposition to the summary judgment motion in this case. While it is less clear whether sanctions are limited to attorneys who sign pleadings or papers under section 128.5, the Court declines to

grant sanctions separately against Gordon's law firm.[3]

### D. Amount of Sanctions

■ Having determined that sanctions are awardable in this case, the Court must determine the amount of sanctions to award. Under section 128.5, if the court finds that a violation has occurred, it may order damages in the amount of "any reasonable expenses, including attorney's fees, incurred by another party." Under Rule 9011, in contrast, the court is given greater flexibility in the remedy.[4] Rule 9011 requires that the court impose an "appropriate sanction", which *may* include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of a document, including a reasonable attorney's fee" (emphasis added).

The Court finds that sanctions should be awarded for the trustee in the amount of $10,000, for Sulmeyer in the amount of $5,000, and for Continental Bank in the amount of $20,000. This is half of the attorneys fees requested by moving parties, or less.

### IV. CONCLUSION

In summary, the Court finds that sanctions may not be imposed under Bankruptcy Rule 9011 for a complaint which was filed in state court and removed to federal court. The Court, however, is not precluded from applying state sanctions law. This Court thus finds that the Wolfs' malicious prosecution complaint that was filed in state court and removed to this Court is subject to the provisions of the California Code of Civil Procedure § 128.5. The Court finds that each cause of action raised in the complaint was totally or completely without merit and is sanctionable under section 128.5.

While sanctions cannot be imposed under rule 9011 for a paper filed in state court, sanctions may be imposed for pleadings in

defense of an action against a motion for summary judgment filed in federal court. The Wolfs' opposition to summary judgment made the argument that the claims for malicious prosecution, abuse of process, and professional negligence were not barred by the statute of limitations. This argument was frivolous and not well grounded in fact or warranted by existing law or good faith argument for the extension, modification, or reversal of existing law.

In consequence the Court awards sanctions, against Roger L. Gordon only, as follows: $20,000 in favor of Continental Bank, $10,000 in favor of the trustee, and $5,000 in favor of the trustee's general counsel. The sanctions are awarded as a result of the Gordon's failure to make a reasonable investigation of the applicable law and the relevant facts, and not because of any wrongdoing on the part of the Wolfs.

Both the motion for remand and the motion for withdrawal of reference were filed in federal court. The provisions of Bankruptcy Rule 9011 apply to both motions. This Court finds, however, that both the motion for remand and the motion for withdrawal of reference were well grounded in fact and warranted by existing law, and thus are not sanctionable under Rule 9011.

The foregoing supplements the Court's findings of fact and conclusions of law issued on this same date.

---

**3.** The Court assumes that the law firm will take responsibility for the sanctions, and that it may be legally obligated to do so.

**4.** The Advisory Committee note to Bankruptcy Rule 9011 states that "[t]he last sentence of this subdivision authorizes a broad range of sanctions." Fed.Bankr.R. 9011 note.