**In re Richard A. SMITH, Debtor.**

**No. 96–80189–478.**

United States Bankruptcy Court, E.D. New York.

Jan. 26, 2009.

---

**372**

Thomas McGowan, Esq., Meltzer, Lippe, Goldstein & Breitstone, LLP, Mineola, NY, for Movants.

Anthony C. Acampora, Esq., Silverman Acampora LLP, Jericho, NY, for Chapter 7 Trustee.

## MEMORANDUM AND ORDER DENYING MOTION TO REOPEN CASE

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court is a motion by a former debtor, Richard A. Smith (the "Debtor"), his wife, Nelsi A. Smith ("Nelsi"), and his sister, Carole Ann Caruso ("Carole") (collectively referred to as the "Movants"), which was filed on October 24, 2008. The Movants seek to reopen the Debtor's Chapter 7 bankruptcy case for the purpose of pursuing an adversary proceeding against Kenneth P. Silverman, Esq., (the "Trustee"), who was the Chapter 7 Trustee of the Debtor's estate, and his bond holders: Liberty Mutual Insurance Company,

National Union Fire Insurance Company, and Fireman's Fund Insurance Company (hereinafter the "Bondholders").[1] The proposed suit alleges that the Trustee committed malpractice, breach of fiduciary duty, and negligence.

The former Trustee filed opposition on November 7, 2009, and a reply by the Movants was interposed on November 12, 2008. The Court heard oral arguments from both parties on November 13, 2008. Subsequent to oral arguments, supplemental papers were filed by the Movants and the former Trustee on December 1, 2008. Oral arguments were heard again on December 22, 2008, and the Movants submitted additional papers on January 2, 2009, as did the former Trustee on January 8, 2009.

After careful review of all of the papers filed and the arguments raised, the Court concludes that under the totality of the circumstances, and for the reasons hereinafter set forth, the Debtor's bankruptcy case should not be reopened and the Movants' request be denied.

The Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A) and 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409(a).

### Facts:

The tortured history of this case stretches over a span of roughly ten years, and as such requires a somewhat lengthy discussion. On January 12, 1996 the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code (the "Code"). The case was first converted to one under Chapter 11 on July 11, 1996, and then was later converted to one under Chapter 7 on April 24, 1997. By Notice of Appointment dated April 29, 1997, Kenneth P. Silverman, Esq. was appointed interim Chapter

---

1. The Court notes that none of the Bondhold-ers were served with this motion.

7 Trustee of the Debtor's estate, and later became the permanent Trustee in the case. In the course of his duties, the Trustee filed several interim reports stating that he was reviewing three pre-petition causes of actions of the Debtor, including a dissolution action, in order to determine whether or not they were valuable to the estate.

The adversary proceeding at the center of this motion to reopen finds its origin primarily in the dissolution and accounting action (collectively the "Dissolution Action") brought by the Debtor and his wife, Nelsi, as shareholders of Meadow Mechanical Corp. (hereinafter "Meadow") against Meadow on July 11, 1990 approximately five and a half years prior to the filing of any bankruptcy petition. The Debtor had a twenty-two and one-half (22.5%) and Nelsi had a five (5%) percent ownership interest in Meadow.

The Dissolution Action was commenced because the Debtor had been removed from his position as President of Meadow by the then Meadow shareholders. The Movants argue that after removing the Debtor, the shareholders of Meadow conveyed assets, business, and business opportunities of Meadow to a new business that they incorporated called Fresh Meadow Corporation (hereinafter "Fresh Meadow"). Fresh Meadow carries on substantially the same business as Meadow.

The defendants in the Dissolution Action elected to purchase the shares of Meadow owned by the Debtor and his wife at their value as of July 10, 1990, which was the date prior to the date the Dissolution Action was commenced. The Fresh Meadow defendants later sought to revoke their election, but the Appellate Division, Second Department rejected these efforts and held them to the prior election. *Smith v.*

*Russo,* 646 N.Y.S.2d 711, 230 A.D.2d 863, 646 N.Y.S.2d 711 (2d Dept.1996). The Appellate Division also required those defendants to post a $750,000 security bond for the Debtor, indicating an inference that there might be a significant value to Debtor's claim, and remanded the case to the Supreme Court, Queens County for further proceedings.

The other Movants seeking to reopen this case are Nelsi, the Debtor's wife, and Carole, the Debtor's sister. On or about September 9, 2003 Nelsi purchased the claims held by creditors Silverite Construction Co., Angelo Silveri, and on or about November 25, 2003 she also purchased the claim of Constance P. Salerno. The combined total of those filed claims are $2,436,919.19. European American Bank (n/k/a Citibank), which, pursuant to a prepetition judgment, had a first priority security interest and lien in, and to, any and all proceeds recovered by the Debtor pursuant to the Dissolution Action in the amount of $251,740.94 together with interest from March 1, 1995 at the judgment rate.[2]

After a review and inquiry into the matter, asserting his business judgment, the Trustee made a determination not to prosecute the Dissolution Action or the other derivative causes of actions alleged by the Debtor against Fresh Meadow. Rather, the Trustee attempted to settle the matter with the Fresh Meadow defendants for $350,000.00. The Trustee's accountants had informed the Trustee that Meadow had a negative value as of the date of the Dissolution Action and therefore the Dissolution Action had minimal value to Debtor's estate. The Debtor and Nelsi vigorously opposed the settlement, and as-

---

**2.** Carole, the Debtor's sister, acquired her claim in the Debtor's estate by purchasing it from Citibank on or about July 5, 2005, which

was after the Court denied the Trustee's offer of compromise and the affirmance by the District Court.

serted that the Debtor's interest in Meadow as of the date of the Dissolution Action was well in excess of $350,000.[3] By decision issued on March 8, 2004 the Court denied the proposed settlement.

In the Court's decision it was noted that the proposed settlement amount would go solely to pay the fees of the Trustee, his professionals, and Citibank, the Debtor's secured creditor. Citibank had supported the Trustee's offer of compromise and did not oppose the proposed settlement. Under the proposed settlement, the general creditors of the Debtor's estate, which included the Debtor's wife, would have received nothing. In that decision, the Court found the Trustee's analysis of the value of the Dissolution Action to be "deficient and incomplete." Also included in the Court's decision was its determination that a cross-motion brought by the Debtor to prosecute the claims on his own behalf was premature. This was due to the fact that the posture of the Trustee was unknown upon denial of the Trustee's motion to settle the claims. *See In re STN Enterprises,* 779 F.2d 901 (2nd Cir.1985). The Court's decision was appealed, and was affirmed by the District Court on March 31, 2005.

Thereafter, on April 20, 2005, the Debtor made a motion seeking to compel the Chapter 7 Trustee to prosecute the claims, and other claims that the Debtor alleged he had against Fresh Meadow that the Trustee had not commenced. The Debtor wished to have the Trustee amend the complaint in the Debtor's Dissolution Action to add certain defendants, a cause of action for breach of fiduciary duty, and a cause of action for fraudulent conveyances from Meadow to Fresh Meadow. The Trustee opposed the motion to have him undertake these causes of action, and offered to allow the Debtor or Citibank to prosecute the alleged claims. An appearance was made by Citibank, which stated that it had no desire to pursue the claim unless it would be allowed to retain all of the economic benefits of doing so, and not have to share the judgment with the Debtor or this Debtor's estate.

At the hearing held on May 10, 2005 the Court made it explicitly clear that it could not and would not compel the Trustee to prosecute claims that the Trustee did not believe would benefit the estate. To do so without any funds in the estate would compromise the Trustee's business judgment. The Trustee informed the court that the estate was administratively insolvent, and any litigation on the derivative claims that the Debtor sought to compel the Trustee to bring would have cost between $50,000 and $100,000 in litigation costs without any assurance of a significant award to the estate. Therefore, the Court denied the motion. No appeal of that decision was made, and as such it is a final order of the Court.

Thereafter, the Debtor filed a motion to prosecute the claims at his sole cost and expense, and on July 14, 2005 the Court authorized the Trustee to abandon to the Debtor the Dissolution Action, the Promissory Note Action, and any claims that the Debtor may have had against any party.

The Debtor then moved in State Court to amend the complaint in the Dissolution Action to add the additional claims. The State Court denied this request on October 16, 2006. According to the State Court the statute of limitations on the causes of action had expired in 2000, which was two-and-a-half years after the Trustee had

---

**3.** Prior to selling their claims to Nelsi Smith, Silverite Construction Co., Angelo Silveri and Constance P. Salerno had objected to the Trustee's first attempts to settle the claims with the Fresh Meadow defendants.

been appointed and prior to the Trustee's settlement motion. The State Court's ruling noted that the claim for breach of fiduciary duty against the Meadow shareholders was barred by N.Y. C.P.L.R. § 214(4), and the fraudulent conveyance claim was barred by N.Y. C.P.L.R. § 213(1). (J. Kelly, October 16, 2006). The reasoning was that that the claims arose from the formation and incorporation of Fresh Meadow in 1993 and 1994, and that by 2006 the statute of limitations had terminated the causes of action.

Up until the state court decision, no one was aware of the statute of limitations having run in 2000. Neither the Debtor, Debtor's counsel, nor Citibank were aware that the statute of limitations had run, and no one advised the Trustee of that fact, or that early in the Debtor's case it was a matter that needed attention in order to preserve whatever there was to be preserved. Even the Fresh Meadow defendants were not aware of that fact or they would not have offered to settle that action years after the statute had run.

On February 7, 2007 the Trustee filed a no-asset report, and the case was closed on February 13, 2007. The Final Decree was signed that same day, and the Chapter 7 Trustee was discharged.

Nearly a year and a half later, on July 2, 2008, the Movants filed a motion to reopen the Debtor's Chapter 7 case in order to commence an adversary proceeding against the discharged Trustee's Counsel for malpractice due to the Trustee's alleged failure to take action on those certain causes of actions held by the Debtor's estate. On July 10, 2008 the Court denied that motion due to the failure of the Mov-

ants to establish privity with the Chapter 7 Trustee's counsel. No appeal of that decision was made. Undeterred the Movants now seek to reopen the Chapter 7 case in order to proceed with an adversary proceeding for malpractice against the former Chapter 7 Trustee, both personally and on his bond, due to alleged breaches of his fiduciary duty and negligence in the performance of his duties.

The Movants allege that the Trustee failed to investigate and preserve several claims that the Debtor allegedly had against Fresh Meadow, and that the Trustee's failure to do so resulted in a breach of his fiduciary duty and negligence. The claims that Movants argue the Trustee failed to bring are set forth as follows: (1) a lawsuit against the trustee's former counsel in this Chapter 7 case, who were terminated in 1999; (2) a claim against the shareholders of Meadow for their alleged fraudulent conveyance of business assets of Meadow to Fresh Meadow; (3) another claim against the shareholders of Meadow for a breach of their fiduciary duties that they owed to Meadow as a result of the alleged fraudulent conveyances made to Fresh Meadow; and (4) failure to collect on a promissory note from Meadow to the Debtor.

However, the Trustee asserts that the New York statute of limitations bars the Movants' suit. The Trustee's position is that the statute of limitations on the underlying claims against Meadow ended in December 2000, and therefore the proposed breach of fiduciary duty and negligence claims against him had run as of December 2003.[4]

---

4. The Court at the December 22, 2008 hearing queried both parties as to when the statute of limitations on the underlying causes of action had run, whether the statute of limitations has run against the Trustee, and whether this would bar the proposed adversary proceeding. The Court authorized additional supplemental papers to be filed by both parties on this point of law. The papers were submitted and have been considered.

With these facts in mind, the Court now addresses whether it should reopen the Debtor's bankruptcy case pursuant to section 350(b) of the Bankruptcy Code.

**Discussion:**

*1. Standard for a Motion to Reopen*

■ Section 350(b) of the Code states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Case law shows that a determination on a motion to reopen a closed bankruptcy case is within the sound discretion of the Bankruptcy Court. *See e.g., Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 541–42 (8th Cir.2005); *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir.1996); *In re Lowery*, 398 B.R. 512, 514 (Bankr.E.D.N.Y.2008) ("The statute is phrased in the permissive and thereby commits the decision as to whether to reopen a bankruptcy case to the sound discretion of the bankruptcy judge"); *In re Navin*, 382 B.R. 6, 12 (E.D.N.Y.2007).

■ In this motion to reopen the case, the Movants have repeatedly argued that the Court should simply grant the motion to reopen without any consideration to the underlying proposed adversary proceeding. Movants are correct in noting that a motion to reopen a bankruptcy case has been stated to be a "ministerial act" that makes the case become an active one after being inactive upon its closing. *See Menk v. LaPaglia (In re Menk)* 241 B.R. 896, 916 (9th Cir. BAP 1999) (stating that "the better practice is the procedurally correct one of requiring merits issues to be left to the underlying litigation."). However, this does not mean that it is never appropriate to consider the proposed underlying adversary proceeding. Where the underlying complaint "is completely lacking in merit, it is not inappropriate for the court to examine the issues, nor is it an abuse of discretion to deny the motion to reopen." *Arleaux v. Arleaux*, 210 B.R. 148, 149 (8th Cir.BAP1997).

■ If the Court were to take the Movants' position, then there would be no exercise of any judicial discretion, and the Court would simply be functioning as a rubber stamp. This is inapposite to the language of the Code. Thus, the Court is not required to turn a blind eye to the reason for the motion and any potential ramifications of harm to the proposed defendants.

For example, in July 2008 this Court denied the Movants' earlier motion to reopen the case to bring suit against Trustee's counsel for its alleged malpractice. As the Court stated at the July 10, 2008 hearing, there was a lack of privity between Trustee's counsel and the Movants, and as such the proposed complaint was fatally defective as a matter of law. *See Wolf v. Kupetz*, 118 B.R. 761, 771–72 (Bankr.C.D.Cal.1990) (holding that there was no privity between trustee's counsel and creditors, and "[w]hile applicable law holds that a trustee owes a fiduciary duty to the creditors, it does not follow that the attorneys for the trustee also owe this same duty.").

Since the legal basis of Movants' prior motion to reopen was totally defective, it was appropriate for the Court to deny their motion to reopen. Had the Court ignored the underlying proposed complaint, then the case would have been reopened and subjected to an immediate motion for summary judgment or motion to dismiss on the privity issue. Such action by the Court would not have served either of the parties or the Court, and would have wasted valuable time and resources. The instant motion to reopen the case is similarly defective.

The decision to look at the legal merits of the underlying cause of action is further supported by the bankruptcy court's decision in *In re Lois C. Hardy*, 209 B.R. 371 (Bankr.E.D.Va.1997). Since the underlying cause of action had no legal merit, the bankruptcy court denied the motion to reopen because no relief could have been afforded to the debtor. *See id.* at 380.

■ The Court is within its discretion to analyze the underlying legal arguments as it is within the discretion of the bankruptcy court to decide whether to reopen the bankruptcy case. In finding that there would be no benefit to the estate there is no need to simply allow the reopening of the case.

## 2. Trustee's Fiduciary Duties

■ It is well established that trustees are required to use reasonable diligence in exercising their duties to convert non-exempt assets of the debtor's estate into money to be distributed to the debtor's creditors. *See e.g., United States v. Shadduck*, 112 F.3d 523, 531 (1st Cir.1997) ("As the representative of the debtor estate . . . it is incumbent upon the trustee to collect and reduce to money all nonexempt assets of the estate . . . .") (internal citation omitted); *Pereira v. Foong (In re Ngan Gung Restaurant)*, 254 B.R. 566, 570 (Bankr. S.D.N.Y.2000); *In re Rollins*, 175 B.R. 69, 74 (Bankr.E.D.Cal.1994); *see also* 6–704 Collier on Bankruptcy–15th Edition Rev. P 704.04. In the instant case, the only assets in the Debtor's estate were the Debtor's causes of action against Meadow and Fresh Meadow.

The Movants' proposed adversary proceeding relies on a fishing expedition by the Movants in an attempt to build a case against the Trustee for his alleged malpractice and negligence.[5] The Movants admitted as much to the Court when they stated that they needed to conduct discovery to see what the Trustee did or did not do. This discovery was available to the Debtor and creditors during the number of years the case was open. No attempts were made to examine the Trustee or any other party. To do so now, 13 years after the Debtor's filing of his petition and 11 years after the Trustee was appointed, is now inappropriate.

The Movants argument regarding the Trustee's actions are pure conjecture. The Court is mindful that it is dealing with a motion to reopen, but it is pertinent for the Court, in utilizing its discretion, to look beyond the mere reopening of the case if there would be no benefit to the estate to do so.

## 3. Trustee's Business Judgment

■ If the adversary proceeding is allowed to proceed then the issue will be whether or not the Trustee's business judgment in not pursuing the claims was appropriate. The law in this circuit is clear. "[A] bankruptcy trustee is immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order." *In re Center Teleproductions, Inc.*, 112 B.R. 567, 578 (Bankr.S.D.N.Y.1990); *see Kovalesky v. Carpenter*, 1997 WL 630144, **4–5, 1997 U.S. Dist. LEXIS 15700, 12–13 (S.D.N.Y.

---

**5.** As Carole Ann Caruso is the assignee of the claim of secured creditor European American Bank (n/k/a Citibank), she stands in the shoes of the prior party. As Citibank did not oppose the settlement, and in fact would have benefited from it, Ms. Caruso stands in its shoes. *See In re CGE Shattuck LLC*, 2000

BNH 047, 2000 WL 33679416 (Bankr.D.N.H. 2000) (commenting that a purchaser of a claim steps into the shoes of that creditor's claim and enjoys both the benefits and limitations of the purchased claim); *In re Kellogg Square P'ship.*, 160 B.R. 332, 335 (Bankr. D.Minn.1993).

Oct. 8, 1997); *Pereira v. Foong (In re Ngan Gung Restaurant)*, 254 B.R. 566, 570–571 (Bankr.S.D.N.Y.2000). Although a trustee is subject to personal liability for negligent violations of duties imposed upon him by law, "a trustee is not liable in any manner for mistake of judgment where discretion is allowed...." *In re Cochise College Park*, 703 F.2d 1339, 1357 (9th Cir.1983).

Thus, while the Trustee did have a fiduciary duty to the estate to liquidate assets, he acted within his discretion under his business judgment to not pursue the alleged derivative claims of the Debtor against Fresh Meadow. The Court cannot impose liability on him for carrying out his duties based on his business judgment.

The Court will not allow the Movants to rehash the results of the May 10, 2005 hearing in which the Court already denied the Movants attempts to compel the Trustee to prosecute the claims in question. That decision and its contemporaneous order were not appealed, and are final. The Movants argue that the Trustee breached his fiduciary duty when he failed to collect on the note from Meadow to the Debtor, but they ignore both the state court and appellate court decisions that stated that to collect on the note was a complicated act, as it was intertwined with the dissolution proceeding, a shareholders' agreement and a subordination agreement. (J. Rutledge, June 18, 1992; Appellate Division, Second Department, April 11, 1994). The note was not a freestanding negotiable instrument which could have been collected without the resolution of the dissolution proceeding.

As the Court noted at the May 10, 2005 hearing, the Trustee had exercised his business judgment in declining to go forward with the claims. *See In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D.Ind.2005) ("bankruptcy trustee is not required to prosecute every cause of action belonging to the bankruptcy estate. Instead, the trustee is given a substantial degree of discretion in deciding how best to administer the estate committed to his care and his actions are measured by a business judgment standard.") (internal citations omitted); *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y.1988) (noting that trustee's have "a substantial degree of prosecutorial discretion" when determining whether to bring a cause of action or not).

It is worth noting that Nelsi, the Debtor's spouse, had the same alleged claims to assert against Fresh Meadow due to her own 5% shareholder interest in Meadow, and was not hampered by any bankruptcy impediment. However, she chose not to pursue the claims. It should also be noted that Citibank, the then-secured creditor in this case, did not seek to pursue these derivative actions where it was most likely to benefit from any funds coming into the estate. Instead, it supported the Trustee's offer to settle the dispute with Fresh Meadow. It is illuminative of the Trustee's own decision not to pursue those claims that these parties also chose not to pursue the alleged derivative claims.

In light of the Trustee's business judgment, the Court turns to the alleged suit that could have been brought against the Trustee's former counsel. The Movants allege that that firm failed to properly investigate the claims and factual issues surrounding the Debtor's bankruptcy case and the interplay between Meadow and Fresh Meadow. The idea that the Trustee should sue his own former counsel for failing to bring causes of action when the Trustee determined that he did not wish to pursue those causes of action is puzzling and makes no sense. Former counsel followed the Trustee's instructions. The Court does not see how this results in a

breach of fiduciary duty to the estate by Trustee's former counsel.

### 4. Statute of Limitations

The Code does not state a limitations period for suit against the trustee personally. Thus, the Court turns to the applicable state law statute of limitations. *See In re Louis Rosenberg Auto Parts, Inc.,* 209 B.R. 668, 673 (Bankr.W.D.Pa.1997); *In re Marie Pastor's Morningstar Management, Ltd.,* 109 B.R. 58, 61 (Bankr. S.D.N.Y.1990); *In re Noakes,* 104 B.R. 323, 327 (Bankr.D.Mont.1989) (applying state statute of limitations when considering a negligence action against a bankruptcy trustee).

### A. New York State Statute of Limitations

■ The New York statute of limitations for an action for malpractice, breach of fiduciary duty, and negligence is three years if the movant is seeking monetary relief. *See* New York C.P.L.R. § 214(6) (2008) (stating, in pertinent part, "Actions to be commenced within three years . . . for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort. . . ."); *Romano v. Romano,* 2 A.D.3d 430, 431, 767 N.Y.S.2d 841, 842 (2d Dep't 2003); *Kaszirer v. Kaszirer,* 286 A.D.2d 598, 598, 730 N.Y.S.2d 87, 88 (1st Dep't 2001). As the Movants here are seeking monetary relief against both the Trustee and the Bondholders the three year statute of limitations is applicable.

■ Under New York law a cause of action for legal malpractice accrues when the injury occurs, "even if the aggrieved party is then ignorant of the wrong or injury." *King v. Albany County Pub. Defender's Off.,* 255 A.D.2d 770, 771, 680 N.Y.S.2d 289, 290 (3rd Dep't 1998) (*quoting Ackerman v. Price Waterhouse,* 84 N.Y.2d 535, 541, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994)); *see Kerbein v. Hutchison,* 2006 N.Y. Slip Op 4488, 2, 30 A.D.3d 730, 816 N.Y.S.2d 591 (N.Y.App. Div.3d Dep't 2006) (noting that the cause of action to recover damages for legal malpractice accrues at the time of the malpractice, or when " 'all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court' ") (internal citations omitted); *Romano v. Romano,* 2 A.D.3d 430, 431, 767 N.Y.S.2d 841, 842 (2d Dep't 2003).

Thus, the date that the underlying causes of action expired is the date from which to calculate the running of the statute of limitations. *See Shumsky v. Eisenstein,* 96 N.Y.2d 164, 166, 750 N.E.2d 67, 726 N.Y.S.2d 365, 367 (2001); *Montes v. Rosenzweig,* 21 A.D.3d 460, 463–464, 800 N.Y.S.2d 444, 447 (2d Dep't 2005).

■ The parties agree that it is now known that the statute of limitations on the underlying claim of fraudulent conveyance against Meadow, and the underlying claim against the shareholders for their breach of fiduciary duty due to transfers made by Meadow expired in December 2000. As a result, in light of New York statutory law, this is the date that the claims against the Trustee would have begun to accrue. Thus, the time to file an adversary proceeding against the Trustee for failure to pursue both of those claims expired in December 2003, which is more than five years ago. Thus, the claims of negligence and breach of fiduciary duty against the Trustee for failure to bring such claims is not timely.

Additionally, assuming *arguendo* that a suit against the Trustee's former counsel could be commenced, the former counsel was terminated in August of 1999. Applying N.Y. C.P.L.R. § 214, a claim could have been brought against the firm for

legal malpractice until, arguably at the latest, August of 2002. Therefore the time to sue the Trustee for his alleged failure to pursue a cause of action against his former counsel expired in August of 2005, which is more than three years ago. Thus, the proposed claim against the Trustee for failure to sue his former counsel is not only inappropriate, but it is not timely, and could not be sustained in the proposed adversary proceeding.

The Court does want to comment that it is remarkable that while the Movants were vigorously opposing the Trustee's proposed settlement in 2003, and were seeking to have the Court compel the Trustee to bring those claims in 2005, they were not aware of the fact that the statute of limitations on the claims had expired five years earlier, nor did they realize that their potential claims against the Trustee were in the process of expiring. In fact the Debtor's counsel at the May 10, 2005 hearing requested having a new trustee brought into the case in order to evaluate what to do with these additional causes of actions. It is clear to the Court that no one knew that the statute of limitations had run on the underlying claims.

Had the Movants looked into the nature of their alleged causes of actions, they could have readily ascertained whether they were still viable. Instead, Movants apparently had a complete lack of knowledge until the state court rejected their attempts to amend their state court complaint in 2006. Furthermore, this lack of knowledge about the statute of limitations is highlighted by the fact that the Fresh Meadow defendants were still working on a settlement with the Trustee in 2003 even though the additional claims against them had expired. Not once was this issue raised to the Court prior to the instant motion by any party

## B. Section 322 and Section 323(d)

The Movants contend that the two-year period set forth in section 322(d) for suits on the trustee's bond also provides a statute of limitations for claims against the Trustee, and would allow suits against the Trustee to be commenced within two years after the Trustee has been discharged. Section 322(d) states that "[a] proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged." [6] That statute has not yet run.

However, the statutory language of section 322(d) is clear. The words chosen by Congress provide for a suit "on a trustee's bond", not for suits against a trustee. *See Oles Grain Co. v. Safeco Ins. Co. of Am.,* 221 B.R. 371, 375 (N.D.Tex. 1998) (holding that Congress intended section 322(d) to "create a statute of limitations for actions on a bankruptcy trustee's bond that was to be the statute of limitations for *such actions.*") (emphasis added); *In re Noakes,* 104 B.R. 323, 327 (Bankr. D.Mont.1989) (applying state statute of limitations in negligence action against the trustee). While the District Court in *Oles Grain* did not explicitly state that section 322(d) was not applicable to suits against the trustee, it is evident from the court's language that it interpreted section 322(d) to provide a statute of limitations for suits on the trustee's bond. Thus, the Court rejects Movants argument that section 322(d) should govern the statute of limitations for proceeding against a trustee personally.

---

**6.** Bankruptcy Rule 2010(b) states that any party in interest may bring a proceeding on the trustee's bond "in the name of the United States for the use of the entity injured by the breach of the condition."

The next issue that the Court turns to is whether or not a suit against the Bondholders could be commenced if a suit against the Trustee is barred by the statute of limitations. *See In re Louis Rosenberg Auto Parts, Inc.*, 209 B.R. 668, 673 (Bankr.W.D.Pa.1997) (stating that "a surety is discharged from liability on a bankruptcy trustee's bond if the pertinent limitations period for an underlying cause of action against the trustee personally has run prior to the commencement of an action upon said bond...."); *In re Tri–State Hoists, Inc.*, 1991 WL 193733, *17 (Bankr. E.D.Pa.1991) ("[Section] 322(d), which provides a limitations period of two years after the trustee's discharge for any action on the trustee's bond, does not reawaken a suit on the Trustees bond when the statute of limitations on the underlying cause of action had already run prior to the Trustee's discharge.").

The Court has conducted a review of the blanket bonds issued from the Eastern District of New York from 1997 (the year the Trustee was appointed) through 2007 (the year the Trustee was discharged). The bonds for 1997 (the year the Trustee was appointed), for 2000 (the year the statute of limitations ran on the underlying claims), 2003 (the year the Trustee attempted to settle the claims), 2005 (the year the Debtor attempted to compel the Trustee to bring the claims), and 2007 (the year the Trustee was discharged) were surety bonds.

A review of New York case law on the issue of surety liability compels the conclusion that the Movants cannot sue the sureties if the statute of limitations bars suit against the principal. *See West–Fair Electric Contractors v. Aetna Casualty & Sur. Co.*, 49 F.3d 48, 51 (2d Cir.1995) (holding that a surety's duty is "coextensive" with that of the principal, but that "[w]hen a guarantee constitutes an inde-pendent agreement imposing greater collateral responsibility on the surety ... the surety's liability is not so limited."); *Venus Mechanical Inc. v. Insurance Co. of North America*, 245 A.D.2d 559, 559, 667 N.Y.S.2d 60 (2d Dep't 1997) (holding that the liability of the surety was measured by the liability of the principal); *MacKennan v. American Casualty Co.*, 169 A.D.2d 709, 710, 564 N.Y.S.2d 462 (N.Y.App. Div.2d Dep't 1991).

The Court of Appeals in *American Trading Co. v. Fish*, 42 N.Y.2d 20, 396 N.Y.S.2d 617, 364 N.E.2d 1309 (1977) provided an exception to the rule when it held that where the agreement entered into between the surety, the principal, and the plaintiff constituted an independent agreement that imposed greater collateral responsibility on the surety, the surety could not assert the principal's defense of statute of limitations. This is the only reason for an exception to the rule. There has been no allegation or evidence in this case that an "independent agreement," such as the one mentioned in *American Trading Co.*, existed between the Trustee, the Debtor, and the Bondholders. Where no exception exists, a surety's liability is tied to the liability of its principal, i.e., the Trustee. As such, the suit against the Trustee's Bondholders cannot stand because the statute of limitations bars suit against the Trustee.

## Conclusion:

The proposed complaint could not withstand a motion to dismiss and there cannot be any relief afforded to the Movants or this Debtor's estate. The only reason offered by the Movants to reopen this case at this time is to examine into the acts of the Trustee in order to fish for evidence to support the Movants' unproven allegations of wrongdoing in spite of all statutes having run. Such a fishing expedition was available to Movants for over 10 years. To

allow this case to be reopened on this basis would be a waste of the parties' and the Court's time and resources. Thus, the Court, in exercising its rightful discretion, denies the Movants' motion to reopen the Debtor's bankruptcy case.